# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDA CALLOWAY, DALE DEAN, ROSE FARELLA, JAYME HESTER, ANGELITA PIERRE-NOEL, and DWAYNE STOWE, on behalf of themselves and all others similarly situated, | Case No.: 1:18-CV-12207-DPW |
| | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| vs. | Judge Douglas P. Woodlock |
| BOSE CORPORATION, | |
| Defendant. | |

The allegations made in this First Amended Class Action Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge.  Each allegation either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## NATURE OF THIS ACTION

1.      Plaintiffs Linda Calloway, Dale Dean, Rose Farella, Jayme Hester, Angelita Pierre-Noel, and Dwayne Stowe, (collectively, "Plaintiffs") bring this proposed class action challenging the actions of Defendant Bose Corporation ("Bose" or "Defendant") in the marketing and sale of Bose SoundSport, SoundSport Free, and SoundSport Pulse wireless headphones (the "Headphones"). Plaintiffs seek damages and equitable relief on behalf of themselves and all others similarly situated.

2.      Bose markets the Headphones as "sports headphones," and represents on its website, marketing materials, and product packaging that the Headphones are sweat-, weather-,

and water-resistant. Bose uses images of sweat-drenched athletes wearing the Headphones while exercising in its promotional materials. Indeed, Bose's website features the following tagline: "Sweating it out in the gym or running through the rain, these are sport earphones built to keep you going every step of the way."

3.      Bose further represents on its website, marketing materials, and product packaging that the Headphones are rechargeable and offer five or six hours of wireless listening on a single charge.[1]

4.      In reality, the Headphones are not sweat-, weather-, or water-resistant and do not function as advertised when exposed to sweat, moisture, or water. And the Headphones' batteries do not last five or six hours on a single charge. This is because the Headphones contain one or more defects that cause the battery life to degrade and diminish and eventually stop retaining a charge after normal usage, a process that accelerates when the Headphones are exposed to sweat or moisture. As a result of the defect(s), the Headphones regularly fail to hold a reasonable charge.

5.      Plaintiffs are among the tens of thousands of consumers nationwide whose expensive Headphones (generally sold for $150 to $250) experience rapidly diminishing battery life and eventual failure to retain a charge after using the Headphones. Plaintiffs further allege that the Headphones fail to retain an adequate charge in part due to the Headphones' failure to resist sweat, weather, and water.

6.      Despite receiving countless complaints from consumers, Defendant refuses to acknowledge or attempt to fix the defects. Instead, when consumers return the defective

---

[1] Bose's website describes the SoundSport wireless headphones as providing "6 hours battery life," the SoundSport Free wireless headphones as providing "5 hours battery life," and the SoundSport Pulse wireless headphones as providing, contradictorily, both "6 hours battery life" and "five hours of wireless power."

Headphones under Bose's warranty, Bose sends replacement Headphones that contain the exact same defects, leaving consumers caught in a cycle of use, malfunction, and replacement. Once the standard one-year warranty period expires, consumers are often left with only a broken pair of Headphones.

7.      Reasonable consumers like Plaintiffs expect that high-end rechargeable Bluetooth headphones that cost between $150 and $250 will continue to function after minimal use, and they would not have purchased the Headphones or would have paid less had they known that Defendant's battery life, rechargeability, and sweat-, weather-, and water-resistant representations were false, and that the Headphones contain one or more defects that cause their batteries to rapidly fail.

8.      As a result of Bose's actions and omissions, Plaintiffs and the proposed class have suffered damages. Wireless rechargeable headphones that are unable to retain a charge for a reasonable amount of time are essentially worthless. Had Plaintiffs and the members of the class known that Defendant's representations were false and that the Headphones contained the defect(s), they would not have bought them or would otherwise have paid less for them. At a minimum, the defective Headphones certainly are worth substantially less than what Plaintiffs and members of the class paid to purchase them.

## PARTIES

9.      Plaintiff Linda Calloway is a California citizen residing in Apple Valley, California.  Ms. Calloway purchased SoundSport wireless headphones from Best Buy in 2017.

10.     Plaintiff Dale Dean is a New York citizen residing in Cheektowaga, New York. Mr. Dean purchased Bose SoundSport Pulse wireless headphones from Verizon in the spring of 2018.

3

11.     Plaintiff Rose Farella is a Florida citizen residing in Tampa, Florida.  Ms. Farella purchased Bose SoundSport wireless headphones from Best Buy in August 2016.

12.     Plaintiff Jayme Hester is a Nebraska citizen residing in Omaha, Nebraska.  Mr. Hester purchased Bose SoundSport wireless headphones from Best Buy in June 2017.

13.     Plaintiff Angelita Pierre-Noel is a New York citizen residing in Brooklyn, New York.  Ms. Pierre-Noel purchased Bose SoundSport wireless headphones from an Amazon store in or about August 2017.

14.     Plaintiff Dwayne Stowe is a Georgia citizen residing in Locust Grove, Georgia. Mr. Stowe purchased Bose SoundSport wireless headphones from Amazon.com in or about January 2018.

15.     Defendant Bose Corporation is a Delaware corporation with its headquarters and principal place of business in Framingham, Massachusetts. Bose is a privately held corporation that designs, develops, and sells audio equipment, including home audio systems and speakers, headphones, professional audio products, and automotive sound systems.

## JURISDICTION AND VENUE

16.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the class and Defendant are citizens of different states.

17.     Venue is proper in this judicial district under 28 U.S.C. §1391 because Defendant is a resident of Framingham, Massachusetts, which is located in this district.

## FACTUAL ALLEGATIONS

***Bose's Representations Regarding Battery Life and Sweat Resistance***

18.     Bose represents on its website, product packaging, and marketing materials that the Headphones are rechargeable, provide five to six hours of listening time on a single charge, and are sweat-, weather-, and water-resistant.

19.     For instance, Bose's "sport headphones" webpage describes SoundSport wireless headphones as "Water resistant, 6 hours battery life."  Under product details, Bose touts in large bold print the headphones' "Sweat- and weather resistant design." Under "SPECS," Bose states "Charge time: 2 hours" and "Battery life: 6 hours per full charge." The product packaging for SoundSport wireless headphones similarly describe the headphones as "Sweat and weather resistant" with "Up to 6 hours per charge."[2]

20.     Bose's "sport headphones" webpage similarly describes SoundSport Pulse wireless headphones as "Water resistant, … 6 hours battery life."  However, the product details page contradicts that claim, stating that "you'll get up to five hours of wireless power" from a charge.  Bose nevertheless assures consumers that the SoundSport Pulse wireless headphones are "Built to keep up" and "resist[] sweat and moisture even during your most intense workouts."

21.     Under SoundSport Free wireless headphones, Bose's "sport headphones" webpage states, "water resistant, 5 hours of battery life."  The product details page states: "Off a single charge, the earbuds play for up to five hours – long enough to power you through almost any workout."  The "SPECS" similarly provide, "Charging time: 2 hours.  Battery life: 5 hours per full charge."

22.     Despite Bose's representations – which are repeated across its website, product packaging, marketing materials, and elsewhere – none of the Headphones have a battery that can

_____

[2] Research has shown that "up to" representations are misleading to consumers, who reasonably interpret "up to" six hours to mean that they would get six hours of battery life.  Bose's headphones, which fail to hold a charge for long, and then not at all, do not provide the expected hours of battery life. As a result, Bose's representations are false and misleading to consumers.

be consistently used for anything close to five to six hours without further charging.  Moreover, as a result of the defect(s), the Headphones often take much longer than two hours to fully charge (if the Headphones accept a charge at all).

23.     Bose's website and marketing materials show athletes lifting weights, rock climbing, playing soccer, running, and snowboarding while wearing the Headphones. Bose's website states in large bold lettering:  "Sweat. Without sweating it. Water and headphones typically don't play nice together.  But we found a way to make it work." Bose brags that the Headphones "aren't afraid of sweat or rain – and now a little weather can't be an excuse to skip a workout."

24.     Bose ensures that its retailers uniformly promote the same battery life and sweat and water resistant messages at consumers' point of purchase.

25.     The representations cited above are false and misleading because the Headphones are not sweat-, weather, or water-resistant, and the Headphones fail to  hold a charge for the advertised time.

**_The Headphones Do Not Function As Represented_**

26.     The false nature of Bose's representations is evident from the virtually unending stream of consumer complaints posted online.  Indeed, negative reviews posted in the last few months on Bose's website alone reflect the sheer scope of the problem[3]:

> a.     "I've only had these a year and the non replaceable battery only give you about 20 minutes for a fully charged battery." (October 2018).
>
> b.     "I bought in June 2018 (blue color) and I'm already on my third pair. The headphones keep dying mysteriously after a month's use. One day they are working and the next day they die. You charge them overnight and they still don't come back to life. I am very disappointed to have to constantly

---

[3] All typographical errors contained in the following consumer complaints are in the original.

go to the Bose store and have to switch them out for new ones."  (October 2018).

c.  "I bought these some months ago, will not hold a charged. Leave it charging overnight and morning walk its at 40%...don't waste you money..DISAPPOINTED." (October 2018).

d.  "I was so excited to use thes[e] for th[e] gym they don't even charge." (October 2018).

e.  "Great When They Work.  The best battery life I can get is around 45-50 mins. The left earpiece doesn't charge sometimes so you show up to the gym....awesome. This is my second pair (first pair did the same thing) and it will be my last." (September 2018)

f.  "Great at first, then failed to hold charge. Just out of Warranty. Disappointing considering the cost." (September 2018).

g.  "I thought these would hold up better. I run a lot and the sweat has caused them to stop working or only work sporadically. Very disappointed." (September 2018).

h.  "Do no[t] buy these! I have had nothing but issues with these and am on my third pair due too the first 2 completely stopping working." (August 2018).

i.  "I liked it very much but now is not working. It used to advi[s]e me some times that battery was low before turning off and yesterday just stopped playing the music when it had around 20%. I charged it and is not working any more, no sound, no light, nothing. Since I started to use them battery never charged 100%. Is this a programmed obsolescence? I see similar comments. The life of my headphones lasted 1 year. I'm frustrated because they are not cheap and I thought Bose was the best." (August 2018)

j.  "Battery does not last!!!! Battery won't last longer than one hour after charging. Had less than a month." (August 2018)

k.  "I bought these a year ago and at first they sounded great and had a long battery life... Then the battery life started to fade, and after a few months one of the headphones stopped working. No big deal it's electronics I sent them back for warranty and they gave me a new pair. Today I went to put them on and they wouldn't turn on after having charged them the day before, oh well I must have forgot to turn them off right, wrong I charged them all morning and they still won't turn on. I give this product a six month shelf life. And in my opinion for a 149.99 plus tax I'd say that's too short." (August 2018).

7

l.      "Great sound not sweat resistant. My 1st pair I bought June 24 exactly one month later I had to return them to Best Buy because the quit working. I wear them while I run mostly ran thru a little rain twice. Got a new replacement. Now 3 weeks later during a quick 2 mile run they stopped working again. My cheap $8 skull candies I bought at Rosa lasted 8 mths with all my sweat and these claim to be sweat resistant which is only reason I bought them. I'm very disappointed cuz I love this brand and sound. I refused to buy beats but now I'll prob get a replacement to keep running and do research and buy a better pair of headphones." (August 2018).

m.      "Terrible battery.  I got th[e]s[e] wireless headphones on March 12, 2018 (4 months ago) and the battery isn't charging well any more. Before it use to last around 2-3 days with long runs. Now it can barely stay on for 2 hra, the sound is great but for a product like this I was expecting more quality and to last long. Even when is not in use the battery drains out." (July 2018)

n.      "Wasted money. Bought almost 2 months ago. I was really excited to get a pair of truly wireless headphones. The cord between my powerbeats continually got caught on something during my workouts. These headphones don't even last an hour. Multiple times have my workouts been ruined due to poor battery life, Left ear phone dropping off, or random disconnects.-threatening this is the last bose product I will ever buy." (July 2018)

o.      "just 3 months!!!!! After 3 months just stop charging, everytime I try to charge them the LED is green and they don't charge." (January 2018)

27.     Bose has been receiving similar reports from consumers for years and nevertheless continues to sell the Headphones:

a.      "Worse than beats and that's hard to do....I got these for fathers day and used about 3 times in the gym. These aside from having either low volume output or lack noise cancellation, aren't sweat resistant. Mine broke in 3 days! Look at Apple review for beats, they have horrible reviews I went through 3 pairs in 3 months. If one pair of these lasted me 3 days I don't want to even think about how many I would go through in 3 months...." (2016).

b.      "Worked Great for 1 week, then died during workout. I left for my run yesterday with 70% charge left. At 28 minutes into the run, the earbuds just turned off and died. I came home to charge them, thinking that they

just were out of batteries. The amber light has been blinking for 10 hours and they will still not turn on. I have had very bad luck with Bose." (2016)

c.     "Significant Issue. I have gone through 6 pairs and finally gave up. About 30-40 minutes into my morning run, static started in the left earbud (which remained even when turned off). On 2 pairs the battery died and wouldn't recharge. I suspect that sweat was somehow the problem. They were great while they were working. (2016)

d.     "Not charging. This is the second pair after I returned the first ones for the same issue. Worked great after the first charge. Then when recharging (at just under 50%) the amber remains blinking indefinitely, I'm now going on hour 16, no green light, no activity when I push the power button. Terrific sound, but the charging remains to be an issue, from personal experience and from what I've read in other reviews. Very frustrating... (2016).

e.     "Quality Nowhere near Bose standard. I bought these four days ago. 60 minutes into my first workout they shutdown and would not turn back on. I thought battery needed to be charged. I charged overnight-verified the battery was at 100%. During my second workout unit just kept randomly turning off. I had to turn back on three time. Then the left ear bud started making some static noise and completely stopped working. (2016)

f.     "Stopped working after a couple days. I LOVED these headphones... before the stopped working... after a couple days.  I went running 2 days after buying them and halfway in, I heard some static and then "Battery at 40%". The headphones then shut off. I've tried charging them and the indicator light flashes for a bit like it's charging, then turns red for a bit, then the light turns off completely. It won't charge and won't turn on. Seems like a lot of people have had this issue..." (2016).

g.     "NOT water resistant to sweat.  Purchased two pair for use at the gym. Circuit training, running, lifting etc. Both my son's and my pair ended up not working after only two weeks at the gym. I think they are fine if you are not going to use them to workout or you are one of those people that go to the gym or ran and don't sweat. Returned them both. Technology is not ready yet." (2016)

28.     In fact, Bose responded to several of these negative reviews in 2016 as follows:

For the majority of customers, the SoundSport wireless is delivering on its promise – it's a headphone that's stable and comfortable, sweat and weather resistant, with amazing sound. But, like you, a small percentage of owners have experienced a problem, and that's not okay. We've taken every headphone returned to us and analyzed them in our labs to get to the bottom of the issue. We discovered SoundSport wireless doesn't perform like it should under specific

conditions related to heavy sweat and moisture. And we now have a solution to make it work just as well in these situations, too. Going forward, every SoundSport wireless will include this update, and they'll be ready by the end of August if you're interested in trying them again. Our support team can answer any questions you may about the product. They can be reached at 1-800-379-2073 Monday through Friday, 9:00AM to 8:00PM (EST).

29.     However, Bose's supposed fix did not solve the problem; customers continued to encounter battery issues with the Headphones, especially after exposing them to sweat.

30.     Customer reviews on Amazon.com paint a strikingly similar picture:

    a.      "THIS IS THE AMENDED REVIEW. Less than a month after I began using the BOSE SoundSport Earbuds, the battery life has gone from 2 hours to no hours. After having the headphones plugged into my computer overnight, when I pressed the power button, nothing happened. The unit no longer holds a charge. I guess I'll have to stick with wires when listening at the gym.

    And now the original review. I purchased these Bose SoundSports to replace a different brand of blu-tooth earbuds that quit working a week after I purchased them. While the Bose headphones are a comfortable fit and do sound good while I am listening to either music or an audiobook when using the rowing machine or stationary bike at the gym, I am less impressed with the battery life. I have never had more than about 2 hours of battery life since the purchase. I won't go into the schematic of my workouts, but each last approximately an hour. At the end of the 2nd workout, the headphones register that the battery is near depletion. So much for the 6 hours of battery life Bose advertises." (December 13, 2017)

    b.      "The headphones fit well into my ear and stay in through hard running, but since I first received them, and over the entire 6 months of use, they have been really hard to charge. I use the included charger, and about 4 days out of 7, the battery dies within 10-30 minutes of my turning them on, even when I've charged overnight. I'm not sure if I got a lemon or not, but I am going to try to return these. The longest charge I've ever gotten is about 60 minutes. I would not recommend these.  Amazon.com (August 19, 2017).

***Plaintiffs' Experiences***

31.     Plaintiff Jayme Hester ("Plaintiff Hester") bought Bose SoundSport wireless headphones in June 2017 from Best Buy.  Plaintiff Hester is an avid runner and purchased the

headphones to use on his runs.  Plaintiff Hester purchased the Bose SoundSport wireless headphones because Bose represented that these headphones (1) are wireless (Bluetooth); (2) are rechargeable; (3) operate for a substantial number of hours between charges;  and (4) are high quality so at to withstand moisture – even during exercise and weather. Plaintiff Hester relied upon these representations when he purchased the headphones.

32.  On approximately October 10, 2017, Plaintiff Hester removed the headphones from the charger (where they had been left to charge overnight) and discovered that the headphones would not turn on. When Plaintiff Hester plugged them back into the charger, he noticed the charge light did not illuminate.

33.  Plaintiff Hester emailed Bose about this issue the same day.  In response, Bose suggested that Mr. Hester perform routine troubleshooting, which included resetting the headphones and updating the headphones' software.  Plaintiff Hester followed Bose's instructions, but the headphones still failed to operate.

34.  Bose subsequently provided Plaintiff Hester a shipping label to return the headphones for an exchange.  Plaintiff Hester was informed that it may take 10 business days to receive replacement headphones.

35.  When Plaintiff Hester received the replacement headphones, he used them without incident for a couple of months.  But on December 19, 2017, the replacement headphones also experienced battery troubles.  More specifically, when Plaintiff Hester attempted to charge the headphones, the indicator light would prematurely turn green to indicate that the headphones were fully charged even though they were not.  From then on, it was impossible to fully charge the headphones' battery. Moreover, what limited charge the headphones could maintain would drain abnormally quickly.  For instance, after leaving the

headphones on the charger for many hours, Plaintiff Hester turned the headphones on and the headphones indicated that they were 80% charged. Plaintiff Hester turned the headphones off and then immediately turned them back on and the headphones indicated they were only 50% charged.

36.     When Plaintiff Hester contacted Bose regarding these battery problems, Bose (again) suggested that he reset the headphones and update their software. He followed this advice from Bose though it did not improve the headphones' performance. So Bose (again) provided Plaintiff Hester a shipping label to return the replacement headphones for an exchange.

37.     Plaintiff Hester's second set of replacement headphones arrived approximately 10 days later. Those headphones – his *third* set of Bose SoundSport wireless headphones – operated more or less normally until June 2018 (about 6 months), when the headphones began randomly powering off during operation. Sometimes the headphones would power back on by themselves immediately, but other times Plaintiff Hester could not get the headphones to power back on for many hours.

38.     Plaintiff Hester again contacted Bose, who instructed him (again) to reset the headphones and update their software, which again did not resolve the issue. So Plaintiff Hester had to send Bose his second set of replacement headphones for yet another exchange.

39.     Had he known that the headphones were not moisture resistant and did not have a reliable rechargeable battery that would last 6 hours, Plaintiff Hester would not have purchased them or would have paid significantly less for them.

40.     Plaintiff Linda Calloway ("Plaintiff Calloway") purchased a pair of Bose SoundSport wireless headphones in 2017 from Best Buy. Plaintiff Calloway purchased the Bose SoundSport wireless headphones because Bose represented that these headphones (1) are

wireless (Bluetooth); (2) are rechargeable; (3) operate for a substantial number of hours between charges;  and (4) are high quality so at to withstand moisture – even during exercise and weather. Plaintiff Calloway relied upon these representations when she purchased the headphones.

41.     Plaintiff Calloway did not open the headphones for approximately four months after purchasing them.Shortly after using the headphones, Plaintiff Calloway noticed that the headphones' battery depleted much faster than represented by Bose. The headphones required charging after even minimal use. Thereafter, the amount of listening time Plaintiff Calloway received per charge continued to diminish.

42.     Plaintiff Calloway then allowed her daughter, who exercises regularly, to use the headphones during her "bootcamp" exercise sessions, subjecting the headphones to sweat and moisture.  The headphones battery began to deplete faster and would only hold a charge for less than one hour during these "bootcamp" sessions.

43.     Had Plaintiff Calloway known that the Headphones were not sweat- or water-resistant, she would not have purchased them or would have paid significantly less for them.

44.     Had Plaintiff Calloway known that the Headphones did not have a battery that would last the represented six hours, she would not have purchased them or would have paid significantly less for them.

45.     Plaintiff Dale Dean ("Plaintiff Dean") purchased a pair of SoundSport Pulse wireless headphones in the spring of 2017 from Verizon. Plaintiff Dean purchased the Bose SoundSport Pulse headphones because Bose represented that these headphones (1) are wireless (Bluetooth); (2) are rechargeable; (3) operate for a substantial number of hours between charges; and (4) are high quality so at to withstand moisture – even during exercise and weather. Plaintiff Dean relied upon these representations when he purchased the headphones.

46.     Approximately one to two months after the purchase, Plaintiff Dean noticed that the headphones' battery depleted much faster than represented by Bose.  The headphones would require charging after even minimal use.

47.     Plaintiff Dean also noticed that the headphones would take much longer to charge than represented by Bose.

48.     Shortly after these issues arose, Plaintiff Dean contacted Bose by phone.  He spoke to a Bose customer service representative and explained to the customer service representative that his headphones were not operating properly and requested to speak to a manager or supervisor.  The customer service representative took down his contact information and told Plaintiff Dean that a manager or supervisor would contact him soon; however, no one from Bose has contacted him.

49.     Had Plaintiff Dean known that the headphones were not moisture-resistant and did not have a reliable, rechargeable battery that would last 5-6 hours per charge, he would not have purchased them or would have paid significantly less for them.

50.     Plaintiff Rose Farella ("Plaintiff Farella") purchased a pair of Bose SoundSport wireless headphones from Best Buy in August 2016.  Plaintiff Farella purchased the Bose SoundSport wireless headphones because Bose represented that these headphones (1) are wireless (Bluetooth); (2) are rechargeable; (3) operate for a substantial number of hours between charges; and (4) are high quality so at to withstand moisture – even during exercise and weather.  Ms. Farella relied upon these representations when she purchased the headphones.

51.     Soon after purchasing the headphones, Plaintiff Farella noticed that she was not receiving anything close to six hours of listening time per charge represented by Bose on the product packaging.

14

52.     The amount of listening time Plaintiff Farella received per charge continued to diminish until June 2018, when her headphones failed to hold any charge at all, rendering them completely inoperable.

53.     Plaintiff Farella contacted Bose about the charging problem, but was told that her warranty had expired and there was nothing Bose would do to help her.

54.     Had Plaintiff Farella known that the headphones were not moisture-resistant and did not have a reliable, rechargeable battery that would last 6 hours per charge, she would not have purchased them or would have paid significantly less for them.

55.     Plaintiff Angelita Pierre-Noel ("Plaintiff Pierre-Noel") purchased Bose SoundSport wireless headphones in or about September 2017 from an Amazon store. Ms. Pierre-Noel purchased the Bose SoundSport wireless headphones because Bose represented that these headphones (1) are wireless (Bluetooth); (2) are rechargeable; (3) operate for a substantial number of hours between charges; and (4) are high quality so at to withstand moisture – even during exercise and weather.  Plaintiff Pierre-Noel relied upon these representations when she purchased the headphones.

56.     About six months after her purchase, in approximately late March/early April 2018, Plaintiff Pierre-Noel noticed that the headphones no longer held a sufficient charge to last through her two-and-a-half hour commute.  Thereafter, the amount of listening time that her headphones functioned per charge continued to diminish.

57.     Plaintiff Pierre-Noel no longer uses her headphones away from home because they require constant recharging to operate.

58.   Had she known that the headphones were not moisture-resistant and did not have a reliable, rechargeable battery that would last five to six hours per charge, Plaintiff Pierre-Noel would not have purchased them or would have paid significantly less for them

59.   Plaintiff Dwayne Stowe ("Plaintiff Stowe") purchased Bose SoundSport wireless headphones from Amazon.com in December 2017.   He bought them to use while strength training and exercising on the treadmill. Plaintiff Stowe purchased the Bose SoundSport wireless headphones because Bose represented that these headphones (1) are wireless (Bluetooth); (2) are rechargeable; (3) operate for a substantial number of hours between charges; and (4) are high quality so at to withstand moisture – even during exercise and weather.   Plaintiff Stowe relied upon these representations when he purchased the headphones.

60.   Approximately three months after the purchase, Plaintiff Stowe's headphones began experiencing battery failure.   More specifically, the amount of charge the headphones would hold began to fall precipitously.   Mr. Stowe currently receives less than an hour of listening time from a charge.

61.   Had he known that the Headphones were not were not moisture resistant or did not have a reliable, rechargeable battery that would last 6 hours per charge, Plaintiff Stowe would not have purchased them or would have paid significantly less for them.

## CHOICE OF LAW ALLEGATIONS

62.   Because this Complaint is brought in Massachusetts, Massachusetts' choice of law regime governs the state law allegations in this Complaint. Under Massachusetts' choice of law rules, Massachusetts law applies to the claims of all class members, regardless of their state of residence or state of purchase.

63.     Because Bose is headquartered — and made all decisions relevant to these claims — in Massachusetts, Massachusetts has a substantial connection to, and materially greater interest in, the rights, interests, and policies involved in this action than any other state. Application of Massachusetts law to Bose and the claims of all class members would not be arbitrary or unfair.

64.     Plaintiffs plead claims on behalf of a nationwide class because the laws for each state do not vary materially for these claims.

65.     Alternatively, Plaintiffs plead state law subclass claims as indicated below.

## CLASS ACTION ALLEGATIONS

66.     Plaintiffs bring this action on behalf of themselves and a class ("Nationwide Class" or "Class") defined as follows:

> All persons residing in the United States who, during the maximum period of time permitted by law, purchased Bose SoundSport, SoundSport Free, or SoundSport Pulse wireless headphones primarily for personal, family or household purposes, and not for resale.[4]

67.     Alternatively, Plaintiff Farella brings this action on behalf of herself and the members of the following subclass ("Florida Subclass"):

> All persons residing in the State of Florida who, during the maximum period of time permitted by law, purchased Bose SoundSport, SoundSport Free, or SoundSport Pulse wireless headphones primarily for personal, family or household purposes, and not for resale.[5]

68.     Alternatively, Plaintiff Hester brings this action on behalf of himself and the members of the following subclass ("Nebraska Subclass"):

> All persons residing in the State of Nebraska who, during the maximum period of time permitted by law, purchased Bose SoundSport, SoundSport Free, or

---

[4] Plaintiffs reserve the right to amend this definition as necessary.
[5] Plaintiff Farella reserves the right to amend this definition as necessary.

SoundSport Pulse wireless headphones primarily for personal, family or household purposes, and not for resale. [6]

69.     Alternatively, Plaintiff Stowe brings this action on behalf of himself and the members of the following subclass ("Georgia Subclass"):

All persons residing in the State of Georgia who, during the maximum period of time permitted by law, purchased Bose SoundSport, SoundSport Free, or SoundSport Pulse wireless headphones primarily for personal, family or household purposes, and not for resale. [7]

70.     Alternatively, Plaintiffs Dean and Pierre-Noel bring this action on behalf of themselves and the members of the following subclass ("New York Subclass"):

All persons residing in the State of New York who, during the maximum period of time permitted by law, purchased Bose SoundSport, SoundSport Free, or SoundSport Pulse wireless headphones primarily for personal, family or household purposes, and not for resale. [8]

71.     Alternatively, Plaintiff Calloway brings this action on behalf of herself and the members of the following subclass ("California Subclass"):

All persons residing in the State of California who, during the maximum period of time permitted by law, purchased Bose SoundSport, SoundSport Free, or SoundSport Pulse wireless headphones primarily for personal, family or household purposes, and not for resale. [9]

72.     Specifically excluded from these definitions are (1) persons who purchased Bose SoundSport, SoundSport Free, or SoundSport Pulse wireless headphones directly from Bose through its website (www.bose.com); (2) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (3) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (4) Class Counsel.

---

[6] Plaintiff Hester reserves the right to amend this definition as necessary.
[7] Plaintiff Stowe reserves the right to amend this definition as necessary.
[8] Plaintiffs Dean and Pierre-Noel reserve the right to amend this definition as necessary.
[9] Plaintiff Calloway reserves the right to amend this definition as necessary.

73.     As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and all subclasses, including Plaintiffs.

74.     Plaintiffs seek only damages and equitable relief on behalf of themselves and the Class Members.  Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class Members.

75.     Members of the Class and Subclasses are so numerous that joinder is impracticable.  While the exact number of Class Members is unknown to Plaintiffs, it is believed that the Class comprises at least tens of thousands of members geographically disbursed throughout the United States. Therefore, the Class Members are so numerous that individual joinder of all Class Members is impracticable under Fed. R. Civ. P. 23(a)(1).

76.     Common questions of law and fact exist as to all Class Members, as required by Fed. R. Civ. P. 23(a)(2), and predominate over any individual questions, as required by Fed. R. Civ. P. 23(b)(3).  These common legal and factual questions include:

a)  Whether the Headphones are defective;

b)  Whether Bose's claim that the Headphones are moisture-resistant is deceptive;

c)  Whether Bose's battery life claims regarding the Headphones are deceptive;

d)  Whether Bose's claim that the Headphones are rechargeable is deceptive;

e)  Whether Bose's claim that the Headphones are durable enough to withstand "working out" is deceptive;

f)  Whether Bose breached express warranties relating to the Headphones including but not limited to whether (1) the Headphones have five or six hours of use on a single charge; and (2) the Headphones are moisture-resistant;

g) Whether Bose breached the implied warranty of merchantability relating to the Headphones;

h) Whether Bose breached the implied warranty of fitness for particular purpose relating to the Headphones;

i) Whether Bose should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the defective Headphones;

j) Whether Plaintiffs and the Class are entitled to damages, including compensatory, exemplary, punitive and statutory damages, and the amount of such damages;

k) Whether Bose should be enjoined from continuing to sell defective Headphones that do not live up to Bose's advertising and marketing claims;

l) Whether Bose engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective Headphones; and

m) Whether Bose's conduct violates Mass. Gen. Laws c. 93A.

77. Plaintiffs' claims are typical of the claims of the Class Members whom they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and each Class Member have been similarly affected by Bose's actionable conduct. Plaintiffs and all members of the Class purchased defective Headphones that render the Headphones either worthless or worth substantially less than the price paid to purchase the Headphones. In addition, Bose's conduct and omissions that gave rise to the claims of Plaintiffs and Class Members (i.e. delivering defective Headphones, making false claims with respect to the Headphones, failing to disclose the known defects, and breaching warranties respecting the Headphones) is the same for all Class Members.

20

78.     Plaintiffs will fairly and adequately represent and protect the interests of the Class Members as required by Fed. R. Civ. P. 23(a)(4).  Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class Members.  Further, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including product defect class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Therefore, the interests of the Class Members will be fairly and adequately protected.

79.     A class action is appropriate under Fed. R. Civ. P. 23(b)(3) because a class action is superior to any other available means for fairly and efficiently adjudicating the controversy. In this regard, the Class Members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against a large corporation such as Defendant. Further, neither Plaintiffs nor their counsel are aware of any other on-going class litigation concerning this controversy.  It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits.  Individualized litigation presents a potential for inconsistent or contradictory judgments, and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case.  By contrast, the class action procedure here will have no management difficulties.

80.     Bose has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CLAIM FOR RELIEF

### Breach of Express Warranty – Magnuson Moss Warranty Act

### (On Behalf of the Nationwide Class)

81.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

82.     The Headphones are consumer products as defined in 15 U.S.C. § 2301(1).

83.     Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

84.     Bose is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

85.     Bose provided Plaintiffs and Class Members "written warranties" within the meaning of 15 U.S.C. § 2301(6).

86.     15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

87.     Bose breached two separate express warranties made to Plaintiffs.

***Moisture-, Sweat-,& Water-Resistant:***

88.     Bose promised, affirmed, and expressly warranted that the Headphones are moisture-, sweat-, and water-resistant.  In other words, Bose expressly warranted to Plaintiffs and Class Members that the Headphones would continue to function after being exposed to moisture – whether it be from exercise,  weather, or another source.

89.     Bose's moisture-, sweat-, and water-resistant warranties became part of the basis of the bargain for Plaintiffs and other Class Members because they relied on such statements in deciding to purchase the Headphones, and because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end sport headphones.

90.     Bose breached its moisture-, sweat- and water-resistant warranties by delivering Headphones that do not withstand exposure to even minimal amounts of sweat or moisture.

91.     At the time the Headphones were sold, Bose knew of the defects they possessed and offered express warranties with no intention of honoring them with respect to the known defects.

92.     Despite repeated demands by Plaintiffs and Class Members that Bose repair or replace the defective Headphones, Bose has refused to provide a permanent fix and simply provides equally defective replacement Headphones if the Headphones are still within the one year express warranty period. Bose's refusal to provide an adequate repair or replacement violates 15 U.S.C. § 2304.

93.     Although notice is not required, where, as here, consumers purchase a product from a retailer rather than a manufacturer, when Plaintiffs contacted Bose concerning the problems with their Headphones, Bose was afforded a reasonable opportunity to cure its breach of its express warranty that Headphones would be sweat- and water-resistant, but Bose failed to do so.

94.     As a direct and proximate result of Bose's breach of its express written warranties regarding the moisture-, sweat-, and water-resistant representations, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

***Battery Life:***

95.     Bose expressly warranted that the Headphones provide either five or six hours of wireless listening on a single charge.

96.     Such statements became the basis of the bargain for Plaintiffs and other Class Members because they relied on such statements in deciding to purchase the Headphones, and because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end rechargeable headphones.

97.     Bose breached its battery life warranties by delivering Headphones that do not deliver as promised and fail to retain a charge for the represented hours.

98.     At the time the Headphones were sold, Bose knew of the defects they possessed and offered express warranties with no intention of honoring them with respect to the known defects.

99.     Despite repeated demands by Plaintiffs and Class Members that Bose repair or replace the defective Headphones, Bose has refused to provide a permanent fix and simply provides equally defective replacement Headphones if the Headphones are still within the one year express warranty period.  Bose's refusal to provide an adequate repair or replacement violates 15 U.S.C. § 2304.

100.    Although notice is not required, where, as here, consumers purchase a product from a retailer rather than a manufacturer, when Plaintiffs contacted Bose concerning the problems with their headphones, Bose was afforded a reasonable opportunity to cure its breach of the express warranty, but failed to do so.

101.    As a direct and proximate result of Bose's breach of its express written warranties regarding battery life, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Breach of Implied Warranty - Magnuson-Moss Warranty Act

### (On Behalf of the Nationwide Class)

102.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

103.    Plaintiffs bring this claim on behalf of the Nationwide Class.

104.    The Headphones are "consumer products" within the meaning of 15 U.S.C. § 2301.

105.    Plaintiffs and members of the Class are "consumers" within the meaning of 15 U.S.C. § 2301 because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

106.    Bose is a "supplier" of consumer products to consumers and a "warrantor" within the meaning of 15 U.S.C. § 2301.

107.    15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

108.    Section 2310(d)(1) of Chapter 15 of the United States Code provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

109.    Bose made written and implied warranties regarding the Headphones to Plaintiffs and Class Members within the meaning of 15 U.S.C. § 2301.  Bose provided Plaintiffs and other Class Members an implied warranty of merchantability within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

110.    Bose breached the implied warranty of merchantability because the Headphones were not fit for the ordinary purpose for which such goods are used.  Specifically, the Headphones contained one or more defects that caused them to fail to be moisture-resistant and fail to retain a charge as advertised, rendering the Headphones unusable for their ordinary purpose.

111.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Bose notice and an opportunity to cure until such time as the Court

determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

112.    Plaintiffs, individually and on behalf of the other Class Members, seeks all damages permitted by law, including diminution in value of their Headphones, in an amount to be proven at trial.

113.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class Members in connection with the commencement and prosecution of this action.

114.    Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1) and damages as a result of Bose's violation of its written and/or implied warranties.

## THIRD CLAIM FOR RELIEF

### Breach of Express Warranty

### (On Behalf of the Nationwide Class)

115.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

116.    Plaintiffs allege that Bose breached two separate express warranties.

*Moisture-,Sweat- and Water-Resistant:*

117.    Bose promised, affirmed, and expressly warranted that Headphones are moisture-, sweat-, and water-resistant. In other words, Bose expressly warranted to Plaintiffs and Class

Members that the Headphones would continue to function after being exposed to moisture from exercise, weather, or another source.

118.   Bose's moisture-, sweat-, and water-resistant warranties became part of the basis of the bargain for Plaintiffs and other Class Members because they relied on such statements in deciding to purchase the Headphones, and because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end wireless and rechargeable headphones.

119.   Bose breached its moisture-, sweat- and water-resistant warranties by delivering Headphones that do not withstand minimal amounts of moisture.

120.   At the time the Headphones were sold, Bose knew of the defects they possessed and offered express warranties with no intention of honoring them with respect to the known defects.

121.   Although notice is not required, where, as here, consumers purchased a product from a retailer rather than a manufacturer, when Plaintiffs contacted Bose concerning the problems with their headphones, Bose was afforded a reasonable opportunity to cure its breach of its express warranty that Headphones would be moisture-, sweat-, and water-resistant, but failed to do so.

122.   As a direct and proximate result of Bose's breach of its express written warranties regarding moisture-, sweat-, and water-resistant representations, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

**Battery Life:**

123.   Bose expressly warranted that the Headphones provide five to six hours of wireless listening on a single charge.

27

124.    Such statements became the basis of the bargain for Plaintiffs and other Class Members because they relied on such statements in deciding to purchase the Headphones, and because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end wireless and rechargeable headphones.

125.    Bose breached its battery life express warranties by delivering Headphones that do not deliver as promised and fail to retain their charge for five to six hours.

126.    At the time the Headphones were sold, Bose knew of the defects they possessed and offered express warranties with no intention of honoring them with respect to the known defects.

127.    Although notice is not required, where, as here, consumers purchase a product from a retailer rather than a manufacturer, when Plaintiffs contacted Bose concerning the problems with their headphones, Bose was afforded a reasonable opportunity to cure its breach of the express warranty, but failed to do so.

128.    As a direct and proximate result of Bose's breach of its express written warranties regarding battery life, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### Implied Warranty of Merchantability – Mass. Gen. Laws ch. 106, § 2-314

### (On Behalf of Nationwide Class)

129.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

130.    Bose is a "merchant" of headphones because Bose is a retail seller of electronic products and accessories and routinely sells a wide variety of headphones.

131.    Bose is also the manufacturer of the Headphones.

132.    Plaintiffs and Class Members are "buyers" of the Headphones because they purchased their headphones for personal use.

133.    Bose impliedly warranted to Plaintiffs and Class Members that its Headphones were "merchantable" within the common meaning of "merchantability" expressed in Mass. Gen. Laws ch. 106, § 2-314.

134.    Mass. Gen. Laws ch. 106, § 2-314 requires that merchantable goods:

  (1)  pass without objection in the trade under the contract description;
  (2)  in the case of fungible goods, are of fair average quality within the description;
  (3)  are fit for the ordinary purposes for which such goods are used;
  (4)  run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;
  (5)  are adequately contained, packaged, and labeled as the agreement may require; and
  (6)  conform to the promises or affirmations of fact made on the container or label if any.

135.    The Headphones would not pass without objection in the trade because they do not perform as warranted – they fail to maintain a charge after minimal use and are not moisture-, sweat-, or water-resistant.

136.    Similarly, the Headphones' failure to maintain a charge after minimal use renders them unfit for ordinary purposes for which such goods are used.

137.    The Headphones are not adequately contained, packaged, and labeled for two independent reasons.

138.    First, the Headphones are not adequately contained, packaged, and labeled because the labeling represents that they are sweat- and water-resistant when they are not.

139.    Second, the Headphones are not adequately contained, packaged, and labeled because the labeling represents that they have a battery which can last for five or six hours following a single charge when the Headphones are in use, which are qualities they do not have.

140.    For the same reason, the Headphones do not conform to the promises or affirmations of fact made on the container or label.

141.    Bose thus breached the implied warranty of merchantability.

142.    Notice of breach is not required because Plaintiffs and the other Class Members did not purchase their Headphones directly from Bose. Even if notice were required, upon information and belief, Defendant has received thousands of customer complaints and communications about the defects, including from many of the Plaintiffs.

143.    As a direct and proximate result of Bose's breach of the implied warranty of merchantability, Plaintiffs and the other Class Members did not receive the benefit of their bargain and received goods with a defect that substantially impairs their value to Plaintiffs and Class Members.  Plaintiffs and Class Members were damaged as a result of the defects in the Headphones, the product's malfunctioning, and the nonuse of their Headphones.

## FIFTH CLAIM FOR RELIEF

### Breach of Implied Warranty of Fitness for a Particular Purpose -

### Mass. Gen. Laws ch. 106, § 2-314

### (On Behalf of the Nationwide Class)

144.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

145.    Bose is a "merchant" of headphones because Bose is a retail seller of electronic products and accessories and routinely sells a wide variety of headphones.

146.    Bose is also the manufacturer of the Headphones.

147.    Plaintiffs and Class Members are "buyers" of the Headphones because they purchased their headphones for personal use.

148.    Bose advertised the Headphones as suitable for wearing while exercising.

149.    Bose advertised the Headphones with depictions of athletes using the Headphones while exercising. The marketing materials show the athletes engaging in weight training, aerobic activity, and running while wearing the Headphones. The marketing materials also show the athletes sweating while wearing the Headphones.

150.    Bose knew that buyers would purchase the Headphones for the particular purpose of wearing them while engaging in exercise that would expose them to harsher environments and stressors, including exposure to heightened temperatures, rain, humidity, sweat, and physical shocks.

151.    The ordinary consumer does not have the electrical engineering or technological background to know whether headphones can endure the volatility, heat, humidity, and sweat commonly involved in a moderate to high intensity exercise session.

152.    When purchasing the Headphones – headphones that are more expensive than competing headphones that are not moisture-, sweat-, and water-resistant – Plaintiffs and Class Members relied on Bose's representations that the Headphones could withstand the stresses of exercise.

153.    The Headphones routinely fail to properly function after use during exercise.

154.    Plaintiffs' and the Class Members' Headphones failed to properly function after they were exposed to moisture.

155.    Consequently, Bose breached the implied warranty of fitness for a particular purpose, specifically that the Headphones would endure through the particular purpose of being used while exercising and would be able to withstand the stressors and environments associated with exercise.

156.    Notice of breach is not required because Plaintiffs and the other Class Members did not purchase their Headphones directly from Bose. Even if notice were required, upon information and belief, Defendant has received thousands of customer complaints and communications about the defects, including from many of the Plaintiffs.

157.    As a direct and proximate result of Bose's breach of the implied warranty of fitness for a particular purpose, Plaintiffs and the other Class Members did not receive the benefit of their bargain and received goods with one or more defects that substantially impair their value to Plaintiffs and Class Members. Plaintiffs and Class Members were damaged as a result of the defects in the Headphones, the Headphones malfunctioning, the inability to use their Headphones while exercising, and the nonuse of their Headphones.

## SIXTH CLAIM FOR RELIEF

### Common Law Fraud

### (On Behalf of the Nationwide Class)

158.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

159.    Bose engaged in fraudulent and deceptive conduct. As described above, Bose's conduct defrauded Plaintiffs and Class Members, by intentionally leading them to believe, through affirmative misrepresentations, omissions, suppressions, and concealments of material fact, that the Headphones possessed important characteristics that they in fact do not possess—

namely that they are moisture-, sweat-, and water-resistant and provide five or six hours of listening on a single charge — and inducing their purchases.

160.    Bose's intentional and material misrepresentations included, among other things, its advertising, marketing materials and messages, and other standardized statements claiming the Headphones are designed for use during workouts, and built to withstand sweat and water.

161.    The foregoing misrepresentations were uniform across all Class Members.

162.    The same extensive and widespread advertising campaign was promoted nationwide, and all of the promotional materials contained the same material representations regarding the Headphones' ability to be used during exercise, that the Headphones provide five or six hours of listening on a single charge, and that the Headphones are moisture-, sweat-, and water-resistant.

163.    These representations were false, as detailed herein. Bose knew the representations were false when it made them, and Bose omitted information about the defects from the Class Members, and thereby intended to defraud purchasers by these omissions and misrepresentations.

164.    Bose's fraud and concealment were also uniform across all Class Members; Bose concealed from everyone the true nature of the failure to hold a charge and battery defects present in the Headphones as well as the fact that the Headphones were not sweat or water resistant.

165.    Bose's misrepresentations and omissions were material in that they would affect a reasonable consumer's decision to purchase Headphones. A reasonable consumer would not purchase high-end rechargeable headphones that fail to retain a charge after only minimal use.

166.   Bose's intentionally deceptive conduct induced Plaintiffs and Class Members to purchase Headphones and resulted in harm and damage to them.

167.   Plaintiffs believed and relied upon Bose's misrepresentations and concealment of the true facts. Class Members are presumed to have believed and relied upon Bose's misrepresentations and concealment of the true facts because those facts are material to a reasonable consumer's decision to purchase Headphones.

168.   As a result of Bose's inducements, Plaintiffs and Class Members sustained actual damages including but not limited to receiving a product that fails to perform as promised and not receiving the benefit of the bargain related to their purchase of the Headphones. If Plaintiffs and Class Members had known about the defect, they would not have purchased the Headphones or would have paid significantly less for them. Bose is therefore liable to Plaintiffs and Class Members in an amount to be proven at trial.

169.   Bose's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiffs' and Class Members' rights and interests. Bose's conduct thus warrants an assessment of punitive damages consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## SEVENTH CLAIM FOR RELIEF

### Breach of Express Warranty -- Fla. Stat. Ann. § 672.313

### (Brought in the Alternative, on Behalf of Florida Subclass)

170.   Plaintiff Farella ("Florida Plaintiff") re-alleges and incorporates each and every allegation set forth above as if fully written herein.

171.   Florida Plaintiff alleges that Bose breached two separate express warranties.

*Moisture-,Sweat-, & Water-Resistant:*

172.    Bose promised, affirmed, and expressly warranted that the Headphones are moisture-, sweat-, and water-resistant. In other words, Bose expressly warranted to Florida Plaintiff and Florida Subclass Members that the Headphones would continue to function after being exposed to moisture during exercise.

173.    Bose's moisture-, sweat- and water-resistant warranties became part of the basis of the bargain for Florida Plaintiff and other Florida Subclass Members because they relied on such statements in deciding to purchase the Headphones, and because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end sport headphones.

174.    Bose breached its moisture-, sweat-, and water-resistant warranties by delivering Headphones that do not withstand minimal amounts of moisture.

175.    At the time the Headphones were sold, Bose knew of the defects they possessed and offered an express warranty with no intention of honoring said warranties with respect to the known defects.

176.    Although notice is not required where, as here, consumers purchase a product from a retailer rather than a manufacturer, when contacted by Headphone purchasers who complained about the problems with their Headphones, Bose was afforded a reasonable opportunity to cure its breach of its express warranty that the Headphones would be sweat- and water-resistant, but failed to do so.

177.    As a direct and proximate result of Bose's breach of its express written warranties regarding the moisture-, sweat-, and water-resistant representations, Florida Plaintiff and Florida Subclass Members have been damaged in an amount to be proven at trial.

*Battery Life:*

178.   Bose expressly warranted that the Headphones provide five or six hours of wireless listening on a single charge.

179.   Such statements became the basis of the bargain for Florida Plaintiff and other Florida Subclass Members because they relied on such statements in deciding to purchase the Headphones, and because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end sport headphones.

180.   Bose breached its battery life express warranties by delivering Headphones that do not deliver as promised and fail to retain their charge for five or six hours.

181.   At the time the Headphones were sold, Bose knew of the defects they possessed and offered express warranties with no intention of honoring them with respect to the known defects.

182.   Although notice is not required where, as here, consumers purchase a product from a retailer rather than a manufacturer, when contacted by Headphone purchasers who complained about the problems with their Headphones, Bose was afforded a reasonable opportunity to cure its breach of the express warranty, but failed to do so.

183.   As a direct and proximate result of Bose's breach of its express written warranties regarding battery life, Florida Plaintiff and Florida Subclass Members have been damaged in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

**Implied Warranty of Merchantability -- Fla. Stat. § 672.314**

**(Brought in the Alternative, on Behalf of Florida Subclass)**

184.    Florida Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

185.    Bose is a "merchant" of headphones because Bose is a retail seller of electronic products and accessories and routinely sells a wide variety of headphones.

186.    Bose is also the manufacturer of the Headphones.

187.    Florida Plaintiff and Florida Subclass Members are "buyers" of the Headphones because they purchased their headphones for personal use.

188.    Bose impliedly warranted to Florida Plaintiff and Florida Subclass Members that its Headphones were "merchantable" within the common meaning of "merchantability" expressed in Fla. Stat. §672.314.

189.    Fla. Stat. §672.314 requires that merchantable goods:

(1)    pass without objection in the trade under the contract description;
(2)    in the case of fungible goods, are of fair average quality within the description;
(3)    are fit for the ordinary purposes for which such goods are used;
(4)    run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;
(5)    are adequately contained, packaged, and labeled as the agreement may require; and
(6)    conform to the promises or affirmations of fact made on the container or label if any.

190.    The Headphones would not pass without objection in the trade because they do not perform as warranted – they fail to maintain a charge after minimal use and are not moisture-, sweat-, or water-resistant.

191.    Similarly, the Headphones' failure to maintain a charge after minimal use renders them unfit for ordinary purposes for which such goods are used.

192.    The Headphones are not adequately contained, packaged, and labeled for two independent reasons.

193. First, the Headphones are not adequately contained, packaged, and labeled because the labeling represents that they are moisture-, sweat-, and water-resistant when they are not.

194. Second, the Headphones are not adequately contained, packaged, and labeled because the labeling represents that they have a battery which can last for five or six hours on a single charge when the Headphones are in use, which are qualities they do not have.

195. For the same reason, the Headphones do not conform to the promises or affirmations of fact made on the container or label.

196. Bose thus breached the implied warranty of merchantability.

197. Notice of breach is not required because Florida Plaintiff and the other Florida Subclass Members did not purchase their Headphones directly from Bose. Even if notice were required, upon information and belief, Defendant has received thousands of customer complaints and communications about the defects, including from many of the Plaintiffs.

198. As a direct and proximate result of Bose's breach of the implied warranty of merchantability, Florida Plaintiff and the other Florida Subclass Members did not receive the benefit of their bargain and received goods with defects that substantially impair their value to Florida Plaintiff and Florida Subclass Members. Florida Plaintiff and Florida Subclass Members were damaged as a result of the defects in the Headphones, the product's malfunctioning, and the nonuse of their Headphones.

**NINTH CLAIM FOR RELIEF**

**Implied Warranty of Fitness for a Particular Purpose – Fla. Stat. § 672.315**

**(Brought in the Alternative, on Behalf of Florida Subclass)**

199.    Florida Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

200.    Bose is a "merchant" of headphones because Bose is a retail seller of electronic products and accessories and routinely sells a wide variety of headphones.

201.    Bose is also the manufacturer of the Headphones.

202.    Florida Plaintiff and Florida Subclass Members are "buyers" of the Headphones because they purchased their headphones for personal use.

203.    Bose advertised the Headphones as suitable for wearing while exercising.

204.    Bose advertised the Headphones with depictions of athletes using the Headphones while exercising. The marketing materials show the athletes engaging in weight training, aerobic activity, running, and gymnastics while wearing the Headphones. The marketing materials also show the athletes sweating profusely while wearing the Headphones.

205.    Bose knew that buyers would purchase the Headphones for the particular purpose of wearing them while engaging in exercise that would expose them to harsher environments and stressors, including exposure to heightened temperatures, rain, humidity, sweat, and physical shocks.

206.    The ordinary consumer does not have the electrical engineering or technological background to know whether headphones can endure the volatility, heat, humidity, and sweat commonly involved in a moderate to high intensity exercise session.

207.    When purchasing the Headphones – headphones that are more expensive than competing headphones that are not moisture-,sweat-, and water-resistant – Florida Plaintiff and Florida Subclass Members relied on Bose's representations that the Headphones could withstand the stresses of exercise.

208.   The Headphones routinely fail to properly function after use during exercise.

209.   Florida Plaintiff's and the Florida Subclass Members' Headphones failed to properly function after they were exposed to moisture.

210.   Consequentially, Bose breached the implied warranty of fitness for a particular purpose, specifically that the Headphones would endure through the particular purpose of being used while exercising and would be able to withstand the stressors and environments associated with exercise. The Headphones did not withstand exposure to moisture.

211.   Notice of breach is not required because Florida Plaintiff and the other Florida Subclass Members did not purchase their Headphones directly from Bose. Even if notice were required, upon information and belief, Defendant has received thousands of customer complaints and communications about the defects, including from many of the Plaintiffs.

212.   As a direct and proximate result of Bose's breach of the implied warranty of fitness for a particular purpose, Florida Plaintiff and the other Florida Subclass Members did not receive the benefit of their bargain and received goods with one or more defects that substantially impair their value to Florida Plaintiff and Florida Subclass Members. Florida Plaintiff and Florida Subclass Members were damaged as a result of the defects in the Headphones, the Headphones malfunctioning, the inability to use their Headphones while exercising, and the nonuse of their Headphones.

## TENTH CLAIM FOR RELIEF

### Violation of Florida Consumer Protection Law

### (Brought in the Alternative, on Behalf of Florida Subclass)

213.   Florida Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

214.     Fla. Stat. § 501.204(1) provides, "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

215.     Bose engaged in unfair and deceptive acts in violation of Fla. Stat. § 501.204 when it represented that the Headphones withstand moisture, sweat, and water, when in fact they do not; Bose's misrepresentations about the Headphones being moisture-, sweat-, and water-resistant constitute an independent basis for a violation of Fla. Stat. § 501.204.

216.     Bose engaged in unfair and deceptive acts in violation of Fla. Stat. § 501.204 when Bose represented that Headphones had five or six hours of battery life following a single charge, when in fact they did not; Bose's misrepresentation about battery life constitutes an independent basis for a violation of Fla. Stat. § 501.204.

217.     Bose engaged in unfair and deceptive acts in violation of Fla. Stat. § 501.204 when in response to requests for replacement Headphones under Bose's warranty, Bose sent consumers Headphones that contained the same defects.

218.     Florida Plaintiff and Florida Subclass Members relied on Bose's misrepresentations when purchasing their Headphones. Had they known that those representations were false, Florida Plaintiff and Florida Subclass Members would not have purchased the Headphones or would have paid less for them.

219.     Florida Plaintiff and the Florida Subclass Members seek all damages permitted by law in an amount to be determined at trial, including attorneys' fee and expenses.

## ELEVENTH CLAIM FOR RELIEF

### Common Law Fraud

### (Brought in the Alternative, on Behalf of Florida Subclass)

220.    Florida Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

221.    Bose engaged in fraudulent and deceptive conduct. As described above, Bose's conduct defrauded Florida Plaintiff and members of the Florida Subclass, by intentionally leading them to believe, through affirmative misrepresentations, omissions, suppressions, and concealments of material fact, that the Headphones possessed important characteristics that they in fact do not possess—namely that they are moisture-, sweat-, and water-resistant and provide five or six hours of listening on a single charge —and inducing their purchases.

222.    Bose's intentional and material misrepresentations included, among other things, its advertising, marketing materials and messages, and other standardized statements claiming the Headphones are designed for use during workouts, and built to withstand moisture, sweat, and water.

223.    The foregoing misrepresentations were uniform across all Class Members.

224.    The same extensive and widespread advertising campaign was promoted throughout Florida, and all of the promotional materials contained the same material representations regarding the Headphones' ability to be used during exercise, that the Headphones provide five or six hours of listening on a single charge, and that the Headphones are moisture-, sweat-, and water-resistant.

225.    These representations were false, as detailed herein. Bose knew the representations were false when it made them and thereby intended to defraud purchasers.

226.    Bose did the following with the intent to deceive Florida Plaintiff and Florida Subclass Members and to induce them to enter into their contracts and   purchase the Headphones:

a. Suggested that the Headphones can withstand moisture, sweat, and water and heavy exercise, even though it knew this to be false;

b. Positively asserted that the Headphones are moisture-, sweat-, and water-resistant;

c. Asserted that Headphones were engineered for sport;

d. Asserted that the Headphones had a rechargeable battery with an five or six hour battery life per charge; and

e. Suppressed and omitted the true nature of the Headphones' defects from Florida Plaintiff and Subclass Members.

227. Bose willfully deceived Florida Plaintiff and Florida Subclass Members with intent to induce them to alter their positions to their detriment by purchasing defective Headphones.

228. Bose's fraud and concealment were also uniform across all Class Members; Bose concealed from everyone the true nature of the failure to hold a charge and battery defects present in the Headphones.

229. Bose's misrepresentations and omissions were material in that they would affect a reasonable consumer's decision to purchase Headphones. A reasonable consumer would not purchase high-end rechargeable headphones that stop being able to retain a charge after only minimal use.

230. Bose's intentionally deceptive conduct induced Florida Plaintiff and Florida Subclass Members to purchase Headphones and resulted in harm and damage to them.

231. Florida Plaintiff believed and relied upon Bose's misrepresentations and concealment of the true facts. Florida Subclass Members are presumed to have believed and relied upon Bose's misrepresentations and concealment of the true facts because those facts are material to a reasonable consumer's decision to purchase Headphones.

232. As a result of Bose's inducements, Florida Plaintiff and Florida Subclass Members sustained actual damages including but not limited to receiving a product that fails to

perform as promised and not receiving the benefit of the bargain related to their purchase of the Headphones. If Florida Plaintiff and Florida Subclass Members had known about the defect, they would not have purchased the Headphones or would have paid significantly less for them. Bose is therefore liable to Florida Plaintiff and Florida Subclass Members in an amount to be proven at trial.

233.    Bose's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Florida Plaintiff's and Florida Subclass Members' rights and interests. Bose's conduct thus warrants an assessment of punitive damages, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## TWELFTH CLAIM FOR RELIEF

### Breach of Express Warranty -- Neb. Rev. Stat. UCC § 2-313

### (Brought In the Alternative, on Behalf of Nebraska Subclass)

234.    Plaintiff Hester ("Nebraska Plaintiff") re-alleges and incorporates each and every allegation set forth above as if fully written herein.

235.    Nebraska Plaintiff alleges that Bose breached two separate express warranties.

*Moisture-, Sweat-, and Water-Resistant:*

236.    Bose promised, affirmed, and expressly warranted that the Headphones are moisture-, sweat- and water-resistant. In other words, Bose expressly warranted to Nebraska Plaintiff and Nebraska Subclass Members that the Headphones would continue to function after being exposed to moisture during exercise.

237.    Bose's moisture-, sweat-, and water-resistant warranties became part of the basis of the bargain for Nebraska Plaintiff and other Nebraska Subclass Members because they relied

44

on such statements in deciding to purchase the Headphones, and because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end sport headphones.

238.    Bose breached its moisture-, sweat-, and water-resistant warranties by delivering Headphones that do not withstand minimal amounts of moisture.

239.    At the time the Headphones were sold, Bose knew of the defects they possessed and offered express warranties with no intention of honoring them with respect to the known defects.

240.    Although notice is not required where, as here, consumers purchase a product from a retailer rather than a manufacturer, when contacted by Headphone purchasers who complained about the problems with their Headphones, Bose was afforded a reasonable opportunity to cure its breach of its express warranty that the Headphones would be sweat- and water-resistant, but failed to do so.

241.    As a direct and proximate result of Bose's breach of its express written warranties, Nebraska Plaintiff and Nebraska Subclass Members have been damaged in an amount to be proven at trial.

***Battery Life:***

242.    Bose expressly warranted that the Headphones provide five or six hours of wireless listening on a single charge.

243.    Such statements became the basis of the bargain for Nebraska Plaintiff and other Nebraska Subclass Members because they relied on such statements in deciding to purchase the Headphones, and because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end sport headphones.

45

244.    Bose breached its battery life express warranties by delivering Headphones that do not deliver as promised and fail to retain their charge for five or six hours.

245.    At the time the Headphones were sold, Bose knew of the defects they possessed and offered express warranties with no intention of honoring them with respect to the known defects.

246.    Although notice is not required where, as here, consumers purchase a product from a retailer rather than a manufacturer, when contacted by Headphone purchasers who complained about the problems with their Headphones, Bose was afforded a reasonable opportunity to cure its breach of the express warranty, but failed to do so.

247.    As a direct and proximate result of Bose's breach of its express written warranties regarding battery life, Nebraska Plaintiff and Nebraska Subclass Members have been damaged in an amount to be proven at trial.

## THIRTEENTH CLAIM FOR RELIEF

### Implied Warranty of Merchantability -- Neb. Rev. Stat. U.C.C. § 2-314

### (Brought in the Alternative, on Behalf of Nebraska Subclass)

248.    Nebraska Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

249.    Bose is a "merchant" of headphones because Bose is a retail seller of electronic products and accessories and routinely sells a wide variety of headphones.

250.    Bose is also the manufacturer of the Headphones.

251.    Nebraska Plaintiff and Nebraska Subclass Members are "buyers" of the Headphones because they purchased their headphones for personal use.

252.    Bose impliedly warranted to Nebraska Plaintiff and Nebraska Subclass Members that its Headphones were "merchantable" within the common meaning of "merchantability" expressed in Neb. Rev. Stat. U.C.C. § 2-314.

253.    Neb. Rev. Stat. U.C.C. § 2-314 requires that merchantable goods:

(1)   pass without objection in the trade under the contract description;
(2)   in the case of fungible goods, are of fair average quality within the description;
(3)   are fit for the ordinary purposes for which such goods are used;
(4)   run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;
(5)   are adequately contained, packaged, and labeled as the agreement may require; and
(6)   conform to the promises or affirmations of fact made on the container or label if any.

254.    The Headphones would not pass without objection in the trade because they do not perform as warranted – they fail to maintain a charge after minimal use and are not moisture-, sweat-, or water-resistant.

255.    Similarly, the Headphones' failure to maintain a charge after minimal use renders them unfit for ordinary purposes for which such goods are used.

256.    The Headphones are not adequately contained, packaged, and labeled for two independent reasons.

257.    First, the Headphones are not adequately contained, packaged, and labeled because the labeling represents that they are moisture-, sweat-, and water-resistant when they are not.

258.    Second, the Headphones are not adequately contained, packaged, and labeled because the labeling represents that they have a battery which can last for five or six hours following a single charge when the Headphones are in use, which are qualities they do not have.

259.    For the same reason, the Headphones do not conform to the promises or affirmations of fact made on the container or label.

260.    Bose thus breached the implied warranty of merchantability.

261.    Notice of breach is not required because Nebraska Plaintiff and the other Nebraska Subclass Members did not purchase their Headphones directly from Bose. Even if notice were required, upon information and belief, Defendant has received thousands of customer complaints and communications about the defects, including from many of the Plaintiffs.

262.    As a direct and proximate result of Bose's breach of the implied warranty of merchantability, Nebraska Plaintiff and the other Nebraska Subclass Members did not receive the benefit of their bargain and received goods with a defect that substantially impairs their value to Nebraska Plaintiff and Nebraska Subclass Members. Nebraska Plaintiff and Nebraska Subclass Members were damaged as a result of the defects in the Headphones, the product's malfunctioning, and the nonuse of their Headphones.

## FOURTEENTH CLAIM FOR RELIEF

**Implied Warranty of Fitness for a Particular Purpose – Neb. Rev. Stat. U.C.C. § 2-315**

**(Brought in the Alternative, on Behalf of Nebraska Subclass)**

263.    Nebraska Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

264.    Bose is a "merchant" of headphones because Bose is a retail seller of electronic products and accessories and routinely sells a wide variety of headphones.

265.    Bose is also the manufacturer of the Headphones.

266.     Nebraska Plaintiff and Nebraska Subclass Members are "buyers" of the Headphones because they purchased their headphones for personal use.

267.     Bose advertised the Headphones as suitable for wearing while exercising.

268.     Bose advertised the Headphones with depictions of athletes using the Headphones while exercising. The marketing materials show the athletes engaging in weight training, aerobic activity, and running while wearing the Headphones. The marketing materials also show the athletes sweating while wearing the Headphones.

269.     Bose knew that buyers would purchase the Headphones for the particular purpose of wearing them while engaging in exercise that would expose them to harsher environments and stressors, including exposure to heightened temperatures, rain, humidity, sweat, and physical shocks.

270.     The ordinary consumer does not have the electrical engineering or technological background to know whether headphones can endure the volatility, heat, humidity, and sweat commonly involved in a moderate to high intensity exercise session.

271.     When purchasing the Headphones – headphones that are more expensive than competing headphones that are not moisture-, sweat-, and water-resistant – Nebraska Plaintiff and Nebraska Subclass Members relied on Bose's representations that the Headphones could withstand the stresses of exercise.

272.     The Headphones routinely fail to properly function after use during exercise.

273.     Nebraska Plaintiff's and the Nebraska Subclass Members' Headphones failed to properly function after they were exposed to moisture.

274.     Consequentially, Bose breached the implied warranty of fitness for a particular purpose, specifically that the Headphones would endure through the particular purpose of being

used while exercising and would be able to withstand the stressors and environments associated with exercise.

275.    Notice of breach is not required because Nebraska Plaintiff and the other Nebraska Subclass Members did not purchase their Headphones directly from Bose. Even if notice were required, upon information and belief, Defendant has received thousands of customer complaints and communications about the defects, including from many of the Plaintiffs.

276.    As a direct and proximate result of Bose's breach of the implied warranty of fitness for a particular purpose, Nebraska Plaintiff and the other Nebraska Subclass Members did not receive the benefit of their bargain and received goods with one or more defects that substantially impair their value to Nebraska Plaintiff and Nebraska Subclass Members. Nebraska Plaintiff and Nebraska Subclass Members were damaged as a result of the defects in the Headphones, the Headphones malfunctioning, the inability to use their Headphones while exercising, and the nonuse of their Headphones.

## FIFTEENTH CLAIM FOR RELIEF

### Violation of Nebraska Consumer Protection Act --

### Neb. Rev. Stat. §59-1601, et seq.

### (Brought in the Alternative, on Behalf of Nebraska Subclass)

277.    Nebraska Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

278.    The Nebraska Consumer Protection Act ("NCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

279.    Bose engaged in unfair and deceptive acts in violation of the NCPA when it represented that the Headphones withstand moisture, sweat, and water, when in fact they do not; Bose's misrepresentations about the Headphones being moisture-, sweat-, and water-resistant constitute an independent basis for a violation of the NCPA.

280.    Bose engaged in unfair and deceptive acts in violation of the NCPA when Bose represented that Headphones had five or six hours of battery life following a single charge, when in fact they did not; Bose's misrepresentation about battery life constitutes an independent basis for a violation of the NCPA.

281.    Bose engaged in unfair and deceptive acts in violation of the NCPA when in response to requests for replacement Headphones under Bose's warranty, Bose sent consumers Headphones that contained the same defects.

282.    Nebraska Plaintiff and Nebraska Subclass Members relied on Bose's misrepresentations when purchasing their Headphones. Had they known that those representations were false, Nebraska Plaintiff and Nebraska Subclass Members would not have purchased the Headphones or would have paid less for them.

283.    Nebraska Plaintiff and the Nebraska Subclass Members seek all damages permitted by law in an amount to be determined at trial, including attorneys' fee and expenses.

<u>**SIXTEENTH CLAIM FOR RELIEF**</u>

**Common Law Fraud**

**(Brought in the Alternative, on Behalf of Nebraska Subclass)**

284.    Nebraska Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

285.    Bose engaged in fraudulent and deceptive conduct. As described above, Bose's conduct defrauded Nebraska Plaintiff and members of the Nebraska Subclass, by intentionally leading them to believe, through affirmative misrepresentations, omissions, suppressions, and concealments of material fact, that the Headphones possessed important characteristics that they in fact do not possess—namely that they are moisture-, sweat-, and water-resistant and provide five or six hours of listening on a single charge —and inducing their purchases.

286.    Bose's intentional and material misrepresentations included, among other things, its advertising, marketing materials and messages, and other standardized statements claiming the Headphones are designed for use during workouts, and built to withstand moisture, sweat, and water.

287.    The foregoing misrepresentations were uniform across all Class Members.

288.    The same extensive and widespread advertising campaign was promoted throughout Nebraska, and all of the promotional materials contained the same material representations regarding the Headphones' ability to be used during exercise, that the Headphones provide five or six hours of listening on a single charge, and that the Headphones are moisture-, sweat-, and water-resistant.

289.    These representations were false, as detailed herein. Bose knew the representations were false when it made them and thereby intended to defraud purchasers.

290.    Bose willfully deceived Nebraska Plaintiff and Nebraska Subclass Members with intent to induce them to alter their positions to their detriment by purchasing defective Headphones.

291.    Bose's fraud and concealment were also uniform across all Class Members; Bose concealed from everyone the true nature of the failure to hold a charge and battery defects present in the Headphones.

292.    Bose's misrepresentations and omissions were material in that they would affect a reasonable consumer's decision to purchase Headphones. A reasonable consumer would not purchase high-end rechargeable headphones that stop being able to retain a charge after only minimal use.

293.    Bose's intentionally deceptive conduct induced Nebraska Plaintiff and Nebraska Subclass Members to purchase Headphones and resulted in harm and damage to them.

294.    Nebraska Plaintiff believed and relied upon Bose's misrepresentations and concealment of the true facts. Nebraska Subclass Members are presumed to have believed and relied upon Bose's misrepresentations and concealment of the true facts because those facts are material to a reasonable consumer's decision to purchase Headphones.

295.    As a result of Bose's inducements, Nebraska Plaintiff and Nebraska Subclass Members sustained actual damages including but not limited to receiving a product that fails to perform as promised and not receiving the benefit of the bargain related to their purchase of the Headphones.  If Nebraska Plaintiff and Nebraska Subclass Members had known about the defect, they would not have purchased the Headphones or would have paid significantly less for them. Bose is therefore liable to Nebraska Plaintiff and Nebraska Subclass Members in an amount to be proven at trial.

296.    Bose's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Nebraska Plaintiff's and Nebraska Subclass Members' rights and interests. Bose's conduct thus warrants an assessment of punitive

damages, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## SEVENTEENTH CLAIM FOR RELIEF

### Breach of Express Warranty - Ga. Code Ann., § 11-2-313

### (Brought in the Alternative, on Behalf of Georgia Subclass)

297.    Plaintiff Stowe ("Georgia Plaintiff") re-alleges and incorporates each and every allegation set forth above as if fully written herein.

298.    Georgia Plaintiff alleges that Bose breached two separate express warranties.

*Moisture-, Sweat-, & Water-Resistant:*

299.    Bose promised, affirmed, and expressly warranted that the Headphones are moisture-, sweat-, and water-resistant. In other words, Bose expressly warranted to Georgia Plaintiff and Georgia Subclass Members that the Headphones would continue to function after being exposed to moisture during exercise.

300.    Bose's moisture-, sweat-, and water-resistant warranties became part of the basis of the bargain for Georgia Plaintiff and other Georgia Subclass Members because they relied on such statements in deciding to purchase the Headphones, and because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end sport headphones.

301.    Bose breached its moisture-, sweat-, and water-resistant warranties by delivering Headphones that do not withstand minimal amounts of moisture.

302.    At the time the Headphones were sold, Bose knew of the defects they possessed and offered express warranties with no intention of honoring them with respect to the known defects.

303. Although notice is not required where, as here, consumers purchase a product from a retailer rather than a manufacturer, when contacted by Headphone purchasers who complained about the problems with their Headphones, Bose was afforded a reasonable opportunity to cure its breach of its express warranty that the Headphones would be sweat- and water-resistant, but failed to do so.

304. As a direct and proximate result of Bose's breach of its express written warranties regarding the moisture-, sweat-, and water-resistant representations, Georgia Plaintiff and Georgia Subclass Members have been damaged in an amount to be proven at trial.

***Battery Life:***

305. Bose expressly warranted that the Headphones provide five or six hours of wireless listening on a single charge.

306. Such statements became the basis of the bargain for Georgia Plaintiff and other Georgia Subclass Members because they relied on such statements in deciding to purchase the Headphones, and because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end sport headphones.

307. Bose breached its battery life express warranties by delivering Headphones that do not deliver as promised and fail to retain their charge for five or six hours.

308. At the time the Headphones were sold, Bose knew of the defects they possessed and offered express warranties with no intention of honoring them with respect to the known defects.

309. Although notice is not required where, as here, consumers purchase a product from a retailer rather than a manufacturer, when contacted by Headphone purchasers who

complained about the problems with their Headphones, Bose was afforded a reasonable opportunity to cure its breach of the express warranty, but failed to do so.

310.    As a direct and proximate result of Bose's breach of its express written warranties regarding battery life, Georgia Plaintiff and Georgia Subclass Members have been damaged in an amount to be proven at trial.

## EIGHTEENTH CLAIM FOR RELIEF

### Implied Warranty of Merchantability -- Ga. Code Ann., § 11-2-314

### (Brought in the Alternative, on Behalf of Georgia Subclass)

311.    Georgia Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

312.    Bose is a "merchant" of headphones because Bose is a retail seller of electronic products and accessories and routinely sells a wide variety of headphones.

313.    Bose is also the manufacturer of the Headphones.

314.    Georgia Plaintiff and Georgia Subclass Members are "buyers" of the Headphones because they purchased their headphones for personal use.

315.    Bose impliedly warranted to Georgia Plaintiff and Georgia Subclass Members that its Headphones were "merchantable" within the common meaning of "merchantability" expressed in Ga. Code Ann., § 11-2-314.

316.    Ga. Code Ann., § 11-2-313 requires that merchantable goods:

(1)    pass without objection in the trade under the contract description;
(2)    in the case of fungible goods, are of fair average quality within the description;
(3)    are fit for the ordinary purposes for which such goods are used;
(4)    run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;
(5)    are adequately contained, packaged, and labeled as the agreement may require; and

(6)   conform to the promises or affirmations of fact made on the container or label if any.

317.   The Headphones would not pass without objection in the trade because they do not perform as warranted – they fail to maintain a charge after minimal use and are not moisture-, sweat-, or water-resistant.

318.   Similarly, the Headphones' failure to maintain a charge after minimal use renders them unfit for ordinary purposes for which such goods are used.

319.   The Headphones are not adequately contained, packaged, and labeled for two independent reasons.

320.   First, the Headphones are not adequately contained, packaged, and labeled because the labeling represents that they are moisture-, sweat-, and water-resistant when they are not.

321.   Second, the Headphones are not adequately contained, packaged, and labeled because the labeling represents that they have a battery which can last for five or six hours following a single charge when the Headphones are in use, which are qualities they do not have.

322.   For the same reason, the Headphones do not conform to the promises or affirmations of fact made on the container or label.

323.   Bose thus breached the implied warranty of merchantability.

324.   Notice of breach is not required because Georgia Plaintiff and the other Georgia Subclass Members did not purchase their Headphones directly from Bose. Even if notice were required, upon information and belief, Defendant has received thousands of customer complaints and communications about the defects, including from many of the Plaintiffs.

325.   As a direct and proximate result of Bose's breach of the implied warranty of merchantability, Georgia Plaintiff and the other Georgia Subclass Members did not receive the

benefit of their bargain and received goods with a defect that substantially impairs their value to Georgia Plaintiff and Georgia Subclass Members. Georgia Plaintiff and Georgia Subclass Members were damaged as a result of the defects in the Headphones, the product's malfunctioning, and the nonuse of their Headphones.

**NINETEENTH CLAIM FOR RELIEF**

**Implied Warranty of Fitness for a Particular Purpose –**

**Ga. Code Ann., § 11-2-315**

**(Brought in the Alternative, on Behalf of Georgia Subclass)**

326.     Georgia Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

327.     Bose is a "merchant" of headphones because Bose is a retail seller of electronic products and accessories and routinely sell a wide variety of headphones.

328.     Bose is also the manufacturer of the Headphones.

329.     Georgia Plaintiff and Georgia Subclass Members are "buyers" of the Headphones because they purchased their headphones for personal use.

330.     Bose advertised the Headphones as suitable for wearing while exercising.

331.     Bose advertised the Headphones with depictions of athletes using the Headphones while exercising. The marketing materials show the athletes engaging in weight training, aerobic activity, and running while wearing the Headphones. The marketing materials also show the athletes sweating while wearing the Headphones.

332.     Bose knew that buyers would purchase the Headphones for the particular purpose of wearing them while engaging in exercise that would expose them to harsher environments and

58

stressors, including exposure to heightened temperatures, rain, humidity, sweat, and physical shocks.

333.    The ordinary consumer does not have the electrical engineering or technological background to know whether headphones can endure the volatility, heat, humidity, and sweat commonly involved in a moderate to high intensity exercise session.

334.    When purchasing the Headphones – headphones that are more expensive than competing headphones that are not moisture-, sweat-, and water-resistant – Georgia Plaintiff and Georgia Subclass Members relied on Bose's representations that the Headphones could withstand the stresses of exercise.

335.    The Headphones routinely fail to properly function after use during exercise.

336.    Georgia Plaintiff's and the Georgia Subclass Members' Headphones failed to properly function after they were exposed to moisture.

337.    Consequentially, Bose breached the implied warranty of fitness for a particular purpose, specifically that the Headphones would endure through the particular purpose of being used while exercising and would be able to withstand the stressors and environments associated with exercise. The Headphones did not withstand exposure to moisture.

338.    Notice of breach is not required because Georgia Plaintiff and the other Georgia Subclass Members did not purchase their Headphones directly from Bose. Even if notice were required, upon information and belief, Defendant has received thousands of customer complaints and communications about the defects, including from many of the Plaintiffs.

339.    As a direct and proximate result of Bose's breach of the implied warranty of fitness for a particular purpose, Georgia Plaintiff and the other Georgia Subclass Members did not receive the benefit of their bargain and received goods with one or more defects that

substantially impair their value to Georgia Plaintiff and Georgia Subclass Members. Georgia Plaintiff and Georgia Subclass Members were damaged as a result of the defects in the Headphones, the Headphones malfunctioning, the inability to use their Headphones while exercising, and the nonuse of their Headphones.

## TWENTIETH CLAIM FOR RELIEF

### Violation of Georgia Fair Business Practices Act --

### Ga. Code Ann. § 10-1-390, et seq.

### (Brought in the Alternative, on Behalf of Georgia Subclass)

340.     Georgia Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

341.     Georgia Plaintiff and the Georgia Subclass Members purchased the Headphones primarily for personal, family or household purposes.

342.     Bose engaged in unfair or deceptive acts in violation of Ga. Code Ann. § 10-1-393, when it represented that the Headphones withstand moisture, sweat, and water, when in fact they do not; Bose's misrepresentations about the Headphones being moisture-, sweat-, and water-resistant constitute an independent basis for a violation of Ga. Code Ann. § 10-1-393.

343.     Bose engaged in unfair or deceptive acts in violation of Ga. Code Ann. § 10-1-393, when it represented that Headphones had five or six hours of battery life following a single charge, when in fact they did not; Bose's misrepresentation about battery life constitutes an independent basis for a violation of Ga. Code Ann. § 10-1-393.

344.     Bose also engaged in unfair and deceptive acts in violation of Ga. Code Ann. § 10-1-393 when in response to requests for replacement Headphones under Bose's warranty, Bose sent consumers Headphones that contained the same defects.

345.     Georgia Plaintiff and the Georgia Subclass Members relied on Bose's misrepresentations when purchasing their Headphones. Had they known that those representations were false, Georgia Plaintiff and the Georgia Subclass Members would not have purchased the Headphones or would have paid less for them.

346.     Georgia Plaintiff and the Georgia Subclass Members seek all damages permitted by law in an amount to be determined at trial, including attorneys' fee and expenses.

## TWENTY-FIRST CLAIM FOR RELIEF

### Common Law Fraud

### (Brought in the Alternative, on Behalf of Georgia Subclass)

347.     Georgia Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

348.     Bose engaged in fraudulent and deceptive conduct. As described above, Bose's conduct defrauded Georgia Plaintiff and Georgia Subclass members, by intentionally leading them to believe, through affirmative misrepresentations, omissions, suppressions, and concealments of material fact, that the Headphones possessed important characteristics that they in fact do not possess—namely that they are moisture-, sweat-, and water-resistant and provide five or six hours of listening on a single charge —and inducing their purchases.

349.     Bose's intentional and material misrepresentations included, among other things, its advertising, marketing materials and messages, and other standardized statements claiming the Headphones are designed for use during workouts, and built to withstand moisture, sweat, and water.

350.     The foregoing misrepresentations were uniform across all Subclass Members.

351.   The same extensive and widespread advertising campaign was promoted throughout Georgia, and all of the promotional materials contained the same material representations regarding the Headphones' ability to be used during exercise, that the Headphones provide five or six hours of listening on a single charge, and that the Headphones are moisture-, sweat-, and water-resistant.

352.   These representations were false, as detailed herein. Bose knew the representations were false when it made them and thereby intended to defraud purchasers.

353.   Bose did the following with the intent to deceive Georgia Plaintiff and Georgia Subclass Members and to induce them to make their purchases:

> (a) Suggested that the Headphones can withstand moisture, sweat, and water and heavy exercise, even though it knew this to be false;
> (b) Positively asserted that the Headphones are moisture-, sweat-, and water-resistant;
> (c) Asserted that Headphones were engineered for sport;
> (d) Asserted that the Headphones had a rechargeable battery with an five or six hour battery life per charge; and
> (e) Suppressed and omitted the true nature of the Headphones' defects from Georgia Plaintiff and Subclass Members.

354.   Bose willfully deceived Georgia Plaintiff and Georgia Subclass Members with intent to induce them to alter their positions to their detriment by purchasing defective Headphones.

355.   Bose's fraud and concealment were also uniform across all Class Members; Bose concealed from everyone the true nature of the failure to hold a charge and battery defects present in the Headphones.

356.   Bose's misrepresentations and omissions were material in that they would affect a reasonable consumer's decision to purchase Headphones. A reasonable consumer would not

purchase high-end rechargeable headphones that stop being able to retain a charge after only minimal use.

357.   Bose's intentionally deceptive conduct induced Georgia Plaintiff and Georgia Class Members to purchase Headphones and resulted in harm and damage to them.

358.   Georgia Plaintiff believed and relied upon Bose's misrepresentations and concealment of the true facts. Georgia Subclass Members are presumed to have believed and relied upon Bose's misrepresentations and concealment of the true facts because those facts are material to a reasonable consumer's decision to purchase Headphones.

359.   As a result of Bose's inducements, Georgia Plaintiff and Georgia Subclass Members sustained actual damages including but not limited to receiving a product that fails to perform as promised and not receiving the benefit of the bargain related to their purchase of the Headphones. If Georgia Plaintiff and Georgia Subclass Members had known about the defect, they would not have purchased the Headphones or would have paid significantly less for them. Bose is therefore liable to Georgia Plaintiff and Georgia Subclass Members in an amount to be proven at trial.

360.   Bose's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Georgia Plaintiff's and Georgia Subclass Members' rights and interests. Bose's conduct thus warrants an assessment of punitive damages, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## TWENTY-SECOND CLAIM FOR RELIEF

### Breach of Express Warranty - NY UCC § 2-313

### (Brought In the Alternative, on Behalf of New York Subclass)

361.     Plaintiffs Dean and Pierre-Noel ("New York Plaintiffs") re-allege and incorporate each and every allegation set forth above as if fully written herein.

362.     New York Plaintiffs allege that Bose breached two separate express warranties.

***Moisture-, Sweat-, & Water-Resistant:***

363.     Bose promised, affirmed, and expressly warranted that the Headphones are moisture-, sweat-, and water-resistant. In other words, Bose expressly warranted to New York Plaintiffs and New York Subclass Members that the Headphones would continue to function after being exposed to moisture during exercise.

364.     Bose's moisture-, sweat-, and water-resistant warranties became part of the basis of the bargain for New York Plaintiffs and other New York Subclass Members because they relied on such statements in deciding to purchase the Headphones, and because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end sport headphones.

365.     Bose breached its moisture-, sweat-, and water-resistant warranties by delivering Headphones that do not withstand minimal amounts of moisture.

366.     At the time the Headphones were sold, Bose knew of the defects they possessed and offered express warranties with no intention of honoring them with respect to the known defects.

367.     Although notice is not required where, as here, consumers purchase a product from a retailer rather than a manufacturer, when contacted by Headphone purchasers who complained about the problems with their Headphones, Bose was afforded a reasonable opportunity to cure its breach of its express warranty that the Headphones would be sweat- and water-resistant, but failed to do so.

368.   As a direct and proximate result of Bose's breach of its express written warranty regarding the sweat- and water-resistant representations, New York Plaintiffs and New York Subclass Members have been damaged in an amount to be proven at trial.

***Battery Life:***

369.   Bose expressly warranted that the Headphones provide five or six hours of wireless listening on a single charge.

370.   Such statements became the basis of the bargain for New York Plaintiffs and other New York Subclass Members because they relied on such statements in deciding to purchase the Headphones, and because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end sport headphones.

371.   Bose breached its battery life express warranties by delivering Headphones that do not deliver as promised and fail to retain their charge for five or six hours.

372.   At the time the Headphones were sold, Bose knew of the defects they possessed and offered express warranties with no intention of honoring them with respect to the known defects.

373.   Although notice is not required where, as here, consumers purchase a product from a retailer rather than a manufacturer, when contacted by Headphone purchasers who complained about the problems with their Headphones, Bose was afforded a reasonable opportunity to cure its breach of the express warranty, but failed to do so.

374.   As a direct and proximate result of Bose's breach of its express written warranties regarding battery life, New York Plaintiffs and New York Subclass Members have been damaged in an amount to be proven at trial.

## TWENTY-THIRD CLAIM FOR RELIEF

### Implied Warranty of Merchantability -- NY UCC § 2-314

### (Brought in the Alternative, on Behalf of New York Subclass)

375.   New York Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

376.   Bose is a "merchant" of headphones because Bose is a retail seller of electronic products and accessories and routinely sells a wide variety of headphones.

377.   Bose is also the manufacturer of the Headphones.

378.   New York Plaintiffs and New York Subclass Members are "buyers" of the Headphones because they purchased their headphones for personal use.

379.   Bose impliedly warranted to New York Plaintiffs and New York Subclass Members that its Headphones were "merchantable" within the common meaning of "merchantability" expressed in NY UCC § 2-314.

380.   NY UCC § 2-314 requires that merchantable goods:

(1)   pass without objection in the trade under the contract description;
(2)   in the case of fungible goods, are of fair average quality within the description;
(3)   are fit for the ordinary purposes for which such goods are used;
(4)   run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;
(5)   are adequately contained, packaged, and labeled as the agreement may require; and
(6)   conform to the promises or affirmations of fact made on the container or label if any.

381.   The Headphones would not pass without objection in the trade because they do not perform as warranted – they fail to maintain a charge after minimal use and are not moisture-, sweat-, or water-resistant.

382.    Similarly, the Headphones' failure to maintain a charge after minimal use renders them unfit for ordinary purposes for which such goods are used.

383.    The Headphones are not adequately contained, packaged, and labeled for two independent reasons.

384.    First, the Headphones are not adequately contained, packaged, and labeled because the labeling represents that they are moisture-, sweat-, and water-resistant when they are not.

385.    Second, the Headphones are not adequately contained, packaged, and labeled because the labeling represents that they have a battery which can last for five or six hours following a single charge when the Headphones are in use, which are qualities they do not have.

386.    For the same reason, the Headphones do not conform to the promises or affirmations of fact made on the container or label.

387.    Bose thus breached the implied warranty of merchantability.

388.    Notice of breach is not required because New York Plaintiffs and the other New York Subclass Members did not purchase their Headphones directly from Bose. Even if notice were required, upon information and belief, Defendant has received thousands of customer complaints and communications about the defects, including from many of the Plaintiffs.

389.    As a direct and proximate result of Bose's breach of the implied warranty of merchantability, New York Plaintiffs and the other New York Subclass Members did not receive the benefit of their bargain and received goods with a defect that substantially impairs their value to New York Plaintiffs and New York Subclass Members. New York Plaintiffs and New York Subclass Members were damaged as a result of the defects in the Headphones, the product's malfunctioning, and the nonuse of their Headphones.

## TWENTY-FOURTH CLAIM FOR RELIEF

**Implied Warranty of Fitness for a Particular Purpose –**

**NY UCC § 2-315**

**(Brought in the Alternative, on Behalf of New York Subclass)**

390.   New York Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

391.   Bose is a "merchant" of headphones because Bose is a retail seller of electronic products and accessories and routinely sells a wide variety of headphones.

392.   Bose is also the manufacturer of the Headphones.

393.   New York Plaintiffs and New York Subclass Members are "buyers" of the Headphones because they purchased their headphones for personal use.

394.   Bose advertised the Headphones as suitable for wearing while exercising.

395.   Bose advertised the Headphones with depictions of athletes using the Headphones while exercising. The marketing materials show the athletes engaging in weight training, aerobic activity, and running while wearing the Headphones. The marketing materials also show the athletes sweating while wearing the Headphones.

396.   Bose knew that buyers would purchase the Headphones for the particular purpose of wearing them while engaging in exercise that would expose them to harsher environments and stressors, including exposure to heightened temperatures, rain, humidity, sweat, and physical shocks.

397.   The ordinary consumer does not have the electrical engineering or technological background to know whether headphones can endure the volatility, heat, humidity, and sweat commonly involved in a moderate to high intensity exercise session.

398.    When purchasing the Headphones – headphones that are more expensive than competing headphones that are not moisture-, sweat-, and water-resistant – New York Plaintiffs and New York Subclass Members relied on Bose's representations that the Headphones could withstand the stresses of exercise.

399.    The Headphones routinely fail to properly function after use during exercise.

400.    New York Plaintiffs' and the New York Subclass Members' Headphones failed to properly function after they were exposed to moisture.

401.    Consequentially, Bose breached the implied warranty of fitness for a particular purpose, specifically that the Headphones would endure through the particular purpose of being used while exercising and would be able to withstand the stressors and environments associated with exercise. The Headphones did not withstand exposure to moisture.

402.    Notice of breach is not required because New York Plaintiffs and the other New York Subclass Members did not purchase their Headphones directly from Bose. Even if notice were required, upon information and belief, Defendant has received thousands of customer complaints and communications about the defects, including from many of the Plaintiffs.

403.    As a direct and proximate result of Bose's breach of the implied warranty of fitness for a particular purpose, New York Plaintiffs and the other New York Subclass Members did not receive the benefit of their bargain and received goods with one or more defects that substantially impair their value to New York Plaintiffs and New York Subclass Members. New York Plaintiffs and New York Subclass Members were damaged as a result of the defects in the Headphones, the Headphones malfunctioning, the inability to use their Headphones while exercising, and the nonuse of their Headphones.

**TWENTY-FIFTH CLAIM FOR RELIEF**

**Violation of New York General Business Law § 349**

**(N.Y. Gen. Bus. Law § 349)**

**(Brought in the Alternative, on Behalf of New York Subclass)**

404.    New York Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

405.    New York Plaintiffs and the New York Subclass Members purchased the Headphones primarily for personal, family, or household purposes.

406.    Bose engaged in deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.* when it represented that the Headphones withstand moisture, sweat, and water, when in fact they do not; Bose's misrepresentations about the Headphones being moisture-, sweat-, and water-resistant constitute an independent basis for a violation of N.Y. Gen. Bus. Law § 349, *et seq.*

407.    Bose engaged in deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349, *et seq* when it represented that Headphones had five or six hours of battery life following a single charge, when in fact they did not; Bose's misrepresentation about battery life constitutes an independent basis for a violation of N.Y. Gen. Bus. Law § 349, *et seq.*

408.    Bose also engaged in unfair and deceptive acts in violation of N.Y. Gen. Bus. Law § 349, *et seq* when in response to requests for replacement Headphones under Bose's warranty, Bose sent consumers Headphones that contained the same defects.

409.    New York Plaintiffs and the New York Subclass Members relied on Bose's misrepresentations when purchasing their Headphones. Had they known that those

representations were false, New York Plaintiffs and the New York Subclass Members would not have purchased the Headphones or would have paid less for them.

410.   New York Plaintiffs and the New York Subclass Members seek all damages permitted by law in an amount to be determined at trial, including attorneys' fee and expenses.

## TWENTY-SIXTH CLAIM FOR RELIEF

### Violation of New York General Business Law § 350

### (N.Y. Gen. Bus. Law § 350)

411.   New York Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

412.   New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]"  False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity."  N.Y. Gen. Bus. Law § 350-a.

413.   Defendant caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including New York Plaintiffs and the other Subclass members.

414.   Defendant violated N.Y. Gen. Bus. Law § 350 because of the misrepresentations and omissions alleged herein, including, but not limited to, Defendant's marketing of the Headphones as moisture-, sweat-, and water-resistant, and as offering five or six hours of playback on a single charge.

415.    In purchasing the Headphones, New York Plaintiffs and the other Subclass members were deceived by Defendant's misrepresentations and omissions.

416.    New York Plaintiffs and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  New York Plaintiffs and Subclass members did not, and could not, unravel Defendant's deception on their own.

417.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

418.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

419.    Defendant intentionally and knowingly misrepresented material facts regarding the Headphones with intent to mislead New York Plaintiffs and the Subclass.

420.    Defendant knew or should have known that its conduct violated General Business Law § 350.

421.    Defendant's conduct proximately caused injuries to New York Plaintiffs and the other Subclass members.

422.    New York Plaintiffs and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that New York Plaintiffs and the other Subclass members overpaid for their Headphones and did not receive the benefit of their bargain, and their Headphones suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

423.     Defendant's violations present a continuing risk to New York Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

424.     New York Plaintiffs and the other Subclass members are entitled to recover their actual damages or $500, whichever is greater.  Because Defendant acted willfully or knowingly, New York Plaintiff and the other Subclass members are entitled to recover three times actual damages, up to $10,000.

## TWENTY-SEVENTH CLAIM FOR RELIEF

### Common Law Fraud

### (Brought in the Alternative, on Behalf of New York Subclass)

425.     New York Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

426.     Bose engaged in fraudulent and deceptive conduct. As described above, Bose's conduct defrauded New York Plaintiffs and New York Subclass members by intentionally leading them to believe, through affirmative misrepresentations, omissions, suppressions, and concealments of material fact, that the Headphones possessed important characteristics that they in fact do not possess—namely that they are moisture-, sweat-, and water-resistant and provide five or six hours of listening on a single charge —and inducing their purchases.

427.     Bose's intentional and material misrepresentations included, among other things, its advertising, marketing materials and messages, and other standardized statements claiming the Headphones are designed for use during workouts, and built to withstand moisture, sweat, and water.

428.     The foregoing misrepresentations were uniform across all Subclass Members.

429.    The same extensive and widespread advertising campaign was promoted throughout New York, and all of the promotional materials contained the same material representations regarding the Headphones' ability to be used during exercise, that the Headphones provide five or six hours of listening on a single charge, and that the Headphones are moisture-, sweat-, and water-resistant.

430.    These representations were false, as detailed herein. Bose knew the representations were false when it made them and thereby intended to defraud purchasers.

431.    Bose did the following with the intent to deceive New York Plaintiffs and New York Subclass Members and to induce them to enter into their contracts:

    a.  Suggested that the Headphones can withstand moisture, sweat, and water and heavy exercise, even though it knew this to be false;

    b.  Positively asserted that the Headphones are moisture-, sweat-, and water-resistant;

    c.  Asserted that Headphones were engineered for sport;

    d.  Asserted that the Headphones had a rechargeable battery with an five or six hour battery life per charge; and

    e.  Suppressed the true nature of the Headphones' defects from New York Plaintiffs and Subclass Members.

432.    Bose willfully deceived New York Plaintiffs and New York Subclass Members with intent to induce them to alter their positions to their detriment by purchasing defective Headphones.

433.    Bose's fraud and concealment were also uniform across all Subclass Members; Bose concealed from everyone the true nature of the failure to hold a charge and battery defects present in the Headphones.

434.    Bose's misrepresentations and omissions were material in that they would affect a reasonable consumer's decision to purchase Headphones. A reasonable consumer would not

purchase high-end rechargeable headphones that stop being able to retain a charge after only minimal use.

435.    Bose's intentionally deceptive conduct induced New York Plaintiffs and New York Class Members to purchase Headphones and resulted in harm and damage to them.

436.    New York Plaintiffs believed and relied upon Bose's misrepresentations and concealment of the true facts. New York Subclass Members are presumed to have believed and relied upon Bose's misrepresentations and concealment of the true facts because those facts are material to a reasonable consumer's decision to purchase Headphones.

437.    As a result of Bose's inducements, New York Plaintiffs and New York Subclass Members sustained actual damages including but not limited to receiving a product that fails to perform as promised and not receiving the benefit of the bargain related to their purchase of the Headphones. If New York Plaintiffs and New York Subclass Members had known about the defect, they would not have purchased the Headphones or would have paid significantly less for them. Bose is therefore liable to New York Plaintiffs and New York Subclass Members in an amount to be proven at trial.

438.    Bose's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for New York Plaintiffs' and New York Subclass Members' rights and interests. Bose's conduct thus warrants an assessment of punitive damages, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## TWENTY-EIGHTH CLAIM FOR RELIEF

### Breach of Express Warranty

### (Brought in the Alternative, on Behalf of California Subclass)

439.    Plaintiff Calloway ("California Plaintiff") re-alleges and incorporates each and every allegation set forth above as if fully written herein.

440.    California Plaintiff alleges that Bose breached two separate express warranties.

***Moisture-, Sweat-, & Water-Resistant:***

441.    Bose promised, affirmed, and expressly warranted that Headphones are moisture-, sweat-, and water-resistant. In other words, Bose expressly warranted to California Plaintiff and California Subclass Members that the Headphones would continue to function after being exposed to moisture during exercise.

442.    Bose's moisture-, sweat- and water-resistant warranties became part of the basis of the bargain for California Plaintiff and other California Subclass Members because they relied on such statements in deciding to purchase the Headphones, and because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end sport headphones.

443.    Bose breached its moisture-, sweat-, and water-resistant warranties by delivering Headphones that do not withstand minimal amounts of moisture.

444.    At the time the Headphones were sold, Bose knew of the defects they possessed and offered express warranties with no intention of honoring them with respect to the known defects.

445.    Although notice is not required, where, as here, consumers purchased a product from a retailer rather than a manufacturer, when Plaintiffs contacted Bose concerning the problems with their headphones, Bose was afforded a reasonable opportunity to cure its breach of its express warranty that Headphones would be sweat- and water-resistant, but failed to do so.

446.    As a direct and proximate result of Bose's breach of its express written warranties regarding the moisture-, sweat-, and water-resistant representations, California Plaintiff and Class Members have been damaged in an amount to be proven at trial.

*Battery Life:*

447.    Bose expressly warranted that the Headphones provide five or six hours of wireless listening on a single charge.

448.    Such statements became the basis of the bargain for California Plaintiff and other California Subclass Members because they relied on such statements in deciding to purchase the Headphones, and because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end sport headphones.

449.    Bose breached its battery life express warranties by delivering Headphones that do not deliver as promised and fail to retain their charge for five or six hours.

450.    At the time the Headphones were sold, Bose knew of the defects they possessed and offered express warranties with no intention of honoring them with respect to the known defects.

451.    Although notice is not required, where, as here, consumers purchase a product from a retailer rather than a manufacturer, when Plaintiffs contacted Bose concerning the problems with their headphones, Bose was afforded a reasonable opportunity to cure its breach of the express warranty, but failed to do so.

452.    As a direct and proximate result of Bose's breach of its express written warranties regarding battery life, California Plaintiff and California Subclass Members have been damaged in an amount to be proven at trial.

## TWENTY-NINTH CLAIM FOR RELIEF

**Implied Warranty of Merchantability – California Song-Beverly Act**

**(Brought in the Alternative, on Behalf of California Subclass)**

453.    California Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

454.    The Headphones are a "consumer good" within the meaning of Cal. Civ. Code § 1791(a).

455.    Plaintiffs and members of the California Subclass are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

456.    Bose is a "manufacturer" of the Headphones within the meaning Cal. Civ. Code § 1791(j).

457.    Bose contracted with retailers so that the retailers could sell Headphones to consumers. Bose intended that consumers would be the end users of Headphones and that consumers would be the beneficiaries of its contracts with retailers to sell Headphones to consumers.

458.    Bose impliedly warranted to California Plaintiff and California Subclass Members that its Headphones were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792; however, as described throughout this Complaint, the Headphones do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

459.    Cal. Civ. Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:
(1) Pass without objection in the trade under the contract description;
(2) Are fit for the ordinary purposes for which such goods are used;
(3) Are adequately contained, packaged, and labeled; and

(4) Conform to the promises or affirmations of fact made on the container or label.

460.    The Headphones would not pass without objection in the trade because they do not perform as warranted because they fail to maintain a charge after minimal use and are not moisture-, sweat-, or water-resistant.

461.    Similarly, the Headphones' failure to maintain a charge after minimal use renders them unfit for ordinary purposes for which such goods are used.

462.    The Headphones are not adequately contained, packaged, and labeled for two independent reasons.

463.    The Headphones are not adequately contained, packaged, and labeled because the labeling represents that they are moisture-, sweat-, and water-resistant, which they are not.

464.    Moreover, the Headphones are not adequately contained, packaged, and labeled because the labeling represents that they have a battery that can last five or six hours following a single charge, when the battery does not last nearly that long.

465.    For the same reason, the Headphones do not conform to the promises or affirmations of fact made on the container or label.

466.    Bose thus breached the implied warranty of merchantability.

467.    Notice of breach is not required because California Plaintiff and the other California Subclass Members did not purchase their Headphones directly from Bose. Even if notice were required, upon information and belief, Defendant has received thousands of customer complaints and communications about the defects, including from many of the Plaintiffs.

468.     As a direct and proximate result of Bose's breach of the implied warranty of merchantability, California Plaintiff and the other California Subclass Members did not receive the benefit of their bargain and received goods with a defect and/or that were the product of poor quality materials and workmanship that substantially impairs their value to California Plaintiff and California Subclass Members.

469.     California Plaintiff and California Subclass Members were damaged as a result of the defects present in the Headphones, the product's malfunctioning, and their inability to use their Headphones.

470.     Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, California Plaintiff and Subclass Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Headphones or the overpayment or diminution in value of their Headphones.

471.     Pursuant to Cal. Civ. Code § 1794, California Plaintiff and the other Subclass Members are entitled to costs and attorneys' fees.

<u>**THIRTIETH CLAIM FOR RELIEF**</u>

**Breach of Implied Warranty of Fitness for a Particular Purpose**

**(Brought in the Alternative, on Behalf of California Subclass)**

472.     California Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

473.     Defendant marketed, distributed, and/or sold the Headphones with implied warranties that it was fit for its particular purpose of use during exercise.

474.     Because Defendant extensively marketed Headphones as a product for use during exercise, Defendant knew at the time it sold Headphones to California Plaintiff and the Subclass

Members that California Plaintiff and the Subclass Members intended to use Headphones for that particular purpose.

475.    California Plaintiff and the Subclass Members relied on Defendant's skill and judgment to furnish goods suitable for use during exercise, and for resistance to moisture, sweat, and water. California Plaintiff and the Subclass Members purchased the Headphones in reliance upon Defendant's implied warranties.

476.    At the time that the Headphones were sold, Defendant knew or had reason to know that California Plaintiff and the California Subclass Members were relying on Defendant's skill and judgment to select or furnish a product capable of operating after exposure to moisture, sweat, and water.

477.    As a direct and proximate cause of Defendant's breach of this implied warranty, California Plaintiff and Subclass Members have been injured and harmed because: (a) they would not have purchased the products on the same terms if the true facts were known concerning the Headphones; (b) they paid a price premium for the products due to Defendant's implied warranties; and (c) they did not receive a product that was fit for its particular purpose of use during exercise and/or after exposure to sweat and moisture.

## THIRTY-FIRST CLAIM FOR RELIEF

### Violation of California's Consumers Legal Remedies Act ("CLRA")

### (Brought in the Alternative, on Behalf of California Subclass)

478.    California Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

479.    Bose is a "person" as defined by the CLRA. Cal. Civ. Code § 1761(c).

480.     California Plaintiff and California Subclass Members are "consumers" within the meaning of the CLRA, as defined by Cal. Civ. Code § 1761(d), who purchased one or more pairs of Headphones.

481.     The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

482.     Bose has engaged in unfair or deceptive trade practices that violated Cal. Civ. Code § 1770(a), as described above and below, by, among other things, failing to disclose the defective nature of the Headphones, representing that the Headphones had characteristics and benefits that they do not have (e.g., durability, battery life, moisture-resistant, sweat-resistant, water-resistant, the ability to use during workouts), representing that the Headphones were of a particular standard, quality, or grade when they were of another, and advertising Headphones with the intent not to sell them as advertised. See Cal. Civ. Code §§ 1770(a)(5), (a)(7), (a)(9).

483.     The information Bose concealed and/or failed to disclose to California Plaintiff and California Subclass Members is material because reasonable consumers would consider the Headphones' battery defect that causes them to fail to hold a reasonable charge and become inoperable during their useful life to be important information when deciding whether to purchase wireless sport headphones.

484.     California Plaintiff and California Subclass members would have behaved differently by not buying the Headphones and/or paying less for the Headphones, had they been aware that the Headphones were defective.

485.     Defendant was obliged to disclose the material facts because: a) Defendant had exclusive knowledge of the material facts not known to California Plaintiff and California

Subclass Members, since only Defendant had access to the aggregate data from its retailers, its own research and tests, and complaints from its customers through its warranty and customer service database(s); and b) Defendant actively concealed and suppressed the material facts from California Plaintiff and California Subclass Members by not warning of the battery defect at the time of purchase; and (c) Defendant made partial representations about the Headphones' battery life and moisture-, sweat-, and water-resistant qualities through a long-term advertising campaign while withholding the material fact that the Headphones have defects that render them inoperable.

486.    California Plaintiff and California Subclass Members justifiably acted or relied to their detriment upon the concealment and/or non-disclosure of material facts as evidenced by their purchases of the defective Headphones.  Had Defendant disclosed the material fact that the Headphones had a defect that causes them to lose the ability to hold a reasonable charge, California Plaintiff and California Subclass Members would have behaved differently by not buying the Headphones and/or paying less for the Headphones.

487.    Defendant's omissions of material facts directly and proximately caused California Plaintiff's and Subclass Member's injuries in that California Plaintiff and Subclass Members would not have overpaid for the Headphones. As such, California Plaintiff and Subclass Members did not receive the benefit of the bargain and were injured.

488.    Bose's misrepresentations about battery life constitute an independent basis for a violation of the CLRA.

489.    Bose's misrepresentations about the Headphones being moisture-, sweat-, and water-resistant constitute an independent basis for a violation of the CLRA.

490.    Bose knew, should have known, or was reckless in not knowing that its products did not have the qualities, characteristics, and functions it represented, warranted, and advertised them to have.

491.    California Plaintiff and Subclass Members are reasonable consumers who expected that their Headphones would work as represented.

492.    As a result of Bose's conduct and unfair or deceptive acts or practices, California Plaintiffs and Subclass Members suffered actual damages in that the Headphones do not function as represented and are not worth the amount paid, and Bose has deprived California Plaintiff and Subclass Members the benefit of the bargain.

493.    California Plaintiff and Subclass Members seek an order enjoining Defendant's unfair or deceptive acts or practices, and awarding damages, equitable relief, and  attorneys' fees and costs under Cal. Civ. Code § 1780(e).[10]

## THIRTY-SECOND CLAIM FOR RELIEF

### Violation of California's Unfair Competition Law ("UCL")

### (Brought in the Alternative, on Behalf of California Subclass)

494.    California Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

495.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair,

---

[10] On October 19, 2018, Plaintiffs mailed a letter to Bose that complied with Section 1782(d) of the CLRA. This letter, attached as Exhibit A, was prepared by Plaintiffs' counsel on behalf of Plaintiffs as well as similarly situated purchasers nationwide. The letter gave Defendant notice of the allegations in this Complaint. On December 10, 2018 Defendant provided a response to Plaintiffs' letter.

deceptive, untrue or misleading advertising." Bose's conduct related to the sale of its defective Headphones violated each of this statute's three prongs.

496.   Bose committed an unlawful business act or practice in violation of Cal. Bus. & Prof. Code § 17200, et seq., by their violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, as set forth above, by the acts and practices set forth in this Complaint.

497.   Bose committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, when it sold Headphones that contained one or more defects causing them to fail to maintain a charge after minimal use; when it represented that the Headphones withstand moisture, sweat, and water, when in fact they do not; when it represented that the Headphones have batteries that last five or six hours, when in fact they do not; and, when in response to requests for replacement Headphones under Bose's warranty, Bose sent consumers Headphones that contained the same defects.

498.   Bose committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., when it affirmatively and knowingly misrepresented that the Headphones were durable and would withstand moisture, sweat, and water, when in fact they do not; when it represented that the Headphones have batteries that last five or six hours, when in fact they do not; and, when in response to requests for replacement Headphones under Bose's warranty, Bose sent consumers Headphones that contained the same defects. Bose's representations and concealment of the defects are likely to mislead the public with regard to the true defective nature of the Headphones.

499.   Bose's misrepresentations about battery life constitute an independent basis for a violation of the fraudulent prong of the UCL.

500.     Bose's misrepresentation about the Headphones being moisture-, sweat-, and water-resistant constitutes an independent basis for a violation of the fraudulent prong of the UCL.

501.     Bose knew, or reasonably should have known, that its Headphones were defective, because they continuously received broken headphones from consumers, often several times from the same individual consumer. Despite the constant stream of returned Headphones, Bose continued to sell Headphones to the public. Bose knew, or reasonably should have known, of the defect(s) because, in the normal course of business, Bose tracks headphones returned under its warranty and the complaints related to those problems and, therefore, must have noticed that there was an unusually high incidence of warranty claims.

502.     As a direct and proximate result of Bose's unfair and deceptive practices, California Plaintiff and Subclass Members suffered and will continue to suffer actual damages.

503.     As a result of its unfair and deceptive conduct, Bose should be required to disgorge its unjust profits and make restitution to California Plaintiff and Subclass Members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

504.     Legal remedy alone will be insufficient to fully redress California Plaintiff's injuries and stop Bose from continuing in its unfair and deceptive conduct. Therefore, California Plaintiff and the Subclass seek equitable relief, including an order enjoining Bose's unfair or deceptive acts or practices, and an award of attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

## THIRTY-THIRD CLAIM FOR RELIEF

### Common Law Fraud

### (Brought in the Alternative, on Behalf of California Subclass)

505.   California Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

506.   Bose engaged in fraudulent and deceptive conduct. As described above, Bose's conduct defrauded California Plaintiff and California Subclass members, by intentionally leading them to believe, through affirmative misrepresentations, omissions, suppressions, and concealments of material fact, that the Headphones possessed important characteristics that they in fact do not possess—namely that they are moisture-, sweat-, and water-resistant and provide five or six hours of listening on a single charge —and inducing their purchases.

507.   Bose's intentional and material misrepresentations included, among other things, its advertising, marketing materials and messages, and other standardized statements claiming the Headphones are designed for use during workouts, and built to withstand moisture, sweat, and water.

508.   The foregoing misrepresentations were uniform across all Class Members.

509.   The same extensive and widespread advertising campaign was promoted throughout California, and all of the promotional materials contained the same material representations regarding the Headphones' ability to be used during exercise, that the Headphones provide five or six hours of listening on a single charge, and that the Headphones are moisture-, sweat-, and water-resistant.

510.   These representations were false, as detailed herein. Bose knew the representations were false when it made them and thereby intended to defraud purchasers.

511.   Bose's actions constitute "actual fraud" within the meaning of Cal. Civ. Code § 1572 because Bose did the following with the intent to deceive California Plaintiff and Subclass Members and to induce them to enter into their contracts:

    a.  Suggested that the Headphones can withstand moisture, sweat, and water and heavy exercise, even though it knew this to be false;

    b.  Positively asserted that the Headphones are moisture-, sweat-, and water-resistant;

    c.  Asserted that Headphones were engineered for sport;

    d.  Asserted that the Headphones had a rechargeable battery with an five or six hour battery life per charge; and

    e.  Suppressed the true nature of the Headphones' defects from California Plaintiff and Subclass Members.

512.    Bose's actions, listed above, also constituted "deceit" as defined by Cal. Civ. Code § 1710 because Bose willfully deceived California Plaintiff and Subclass Members with intent to induce them to alter their positions to their detriment by purchasing defective Headphones.

513.    Bose's fraud and concealment were also uniform across all California Subclass Members; Bose concealed from everyone the true nature of the failure to hold a charge and battery defects present in the Headphones.

514.    Bose's misrepresentations and omissions were material in that they would affect a reasonable consumer's decision to purchase Headphones. A reasonable consumer would not purchase high-end rechargeable headphones that stop being able to retain a charge after only minimal use.

515.    Bose's intentionally deceptive conduct induced California Plaintiff and California Subclass Members to purchase Headphones and resulted in harm and damage to them.

516.    California Plaintiff believed and relied upon Bose's misrepresentations and concealment of the true facts. California Subclass Members are presumed to have believed and relied upon Bose's misrepresentations and concealment of the true facts because those facts are material to a reasonable consumer's decision to purchase Headphones.

517.     As a result of Bose's inducements, California Plaintiff and California Subclass Members sustained actual damages including but not limited to receiving a product that fails to perform as promised and not receiving the benefit of the bargain related to their purchase of the Headphones. If California Plaintiff and Subclass Members had known about the defect, they would not have purchased the Headphones or would have paid significantly less for them. Bose is therefore liable to California Plaintiff and Subclass Members in an amount to be proven at trial.

518.     Bose's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for California Plaintiff and California Subclass Members' rights and interests. Bose's conduct thus warrants an assessment of punitive damages under Cal. Civ. Code § 3294, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## THIRTY-FOURTH CLAIM FOR RELIEF

### Violation of Massachusetts General Laws Chapter 93A

### (Massachusetts Consumer Protection Act)

### (On Behalf of the Nationwide Class)

519.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

520.     Bose's business acts and practices alleged throughout this Complaint constitute unfair, unconscionable, and/or deceptive methods, acts, or practices under the Massachusetts Consumer Protection Law, Mass. Gen. Laws Ch. 93A  ("93A").  Bose's unfair, unconscionable, and/or deceptive methods, acts, and/or practices include, but are not limited to, the following: (1) representing that the Headphones withstand moisture, sweat, and water, when in fact they do not;

(2) representing that Headphones had five or six hours of battery life following a single charge, when in fact they did not; and (3) sending consumers Headphones that contained the same defect in response to requests for replacement Headphones under Bose's warranty.   Moreover, as explained above the Plaintiffs and the putative Class suffered a financial injury as a result of these unfair and deceptive acts. The acts complained of were performed knowingly and willfully by Defendant, in the face of an onslaught of consumer complaints over several years as detailed above.

521.    The practices of Bose, described above, constitute unfair or deceptive acts or practices, which violate 93A for, inter alia, one or more of the following reasons:

a.    Bose represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

b.    Bose provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the Headphones;

c.    Bose represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d.    Bose engaged in unconscionable commercial practices in failing to reveal material facts and information about the Headphones, which did, or tended to, mislead Plaintiffs and the Class Members about facts that could not reasonably be known by the consumer;

e.    Bose failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f.    Bose caused Plaintiffs and the Class Members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

g.      Bose failed to reveal material facts to Plaintiffs and the Class Members with the intent that Plaintiffs and the Class members rely upon the omission;

h.      Bose made material misrepresentations and misstatements of fact to Plaintiffs and the Class Members that resulted in Plaintiffs and the Class Members reasonably believing the represented or suggested state of affairs to be other than what they actually were because the misstatements had a tendency to deceive; and,

i.      Bose intended that Plaintiffs and the other Class Members rely on its misrepresentations and omissions, so that Plaintiffs and other Class Members would purchase the Headphones.

522.    Under all of these circumstances, Bose's conduct in employing these unfair and deceptive trade practices was malicious, knowing, willful, wanton, and outrageous such as to shock the conscience of the community and warrant the imposition of punitive treble damages.

523.    Bose's actions impact the public interest because Plaintiffs and Class Members were injured in exactly the same way as thousands of others purchasing Headphones as a result of and pursuant to Bose's generalized course of deception described above.

524.    Had Plaintiffs and other Class Members known of the defective nature of the Headphones, they would not have purchased the Headphones or would have paid less for their them, thereby suffering financial injury.

525.    In satisfaction of Mass. Gen. Laws Ch. 93A, §9(3), Plaintiffs made a written demand on Bose more than thirty days prior to this filing. *See* Exhibit A. The letter asserted that the rights of consumers as claimants had been violated, described the unfair and deceptive acts committed by Bose, and specified the injuries suffered by Plaintiffs and the Class Members as well as the relief sought. Bose's response did not remedy the violations set forth in the letter and,

as such, Plaintiffs and Class Members are entitled to all remedies available at law, including but not limited to treble damages, attorneys' fees and costs.

526.    The foregoing acts, omissions, and practices proximately caused Plaintiffs and Class Members to suffer actual damages in the form of, inter alia, the purchase price of their Headphones or the overpayment or diminution in value of their Headphones.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

A. Certify the Class pursuant to Rule 23;

B. Award damages, including compensatory, exemplary, and statutory damages, to Plaintiffs and the Class in an amount to be determined at trial;

C. Grant restitution to Plaintiffs and the Class and require Bose to disgorge its ill-gotten gains;

D. Permanently enjoin Bose from engaging in the wrongful and unlawful conduct alleged herein;

E. Award punitive damages, including but not limited to treble damages pursuant to 93A, to the extent permitted by law, in an amount to be determined at trial;

F. Award Plaintiffs and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G. Award Plaintiffs and the Class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

H. Award all such further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Dated: December 21, 2018

\s\ *Sean K. Collins*

Sean K. Collins (BBO# 687158)
Law Offices of Sean K. Collins
184 High Street, Suite 503
Boston, MA 02110
Telephone: (617) 320-8485
Fax: (617) 227-2843
Sean@Neinsurancelaw.com

Jeffrey S. Goldenberg (*pro hac vice*)
Todd Naylor (*pro hac vice*)
Goldenberg Schneider, L.P.A.
One West 4th Street, 18th Floor
Cincinnati, OH 45249
Telephone: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com

Justin C. Walker (*pro hac vice*)
Finney Law Firm, LLC
4270 Ivy Pointe Boulevard, Suite 225
Cincinnati, OH 45245
Telephone: (513) 943-6660
Fax: (513) 943-6669
justin@finneylawfirm.com

W.B. Markovits (*pro hac vice*)
Paul M. DeMarco (*pro hac vice*)
Terence R. Coates (*pro hac vice*)
Markovits, Stock & DeMarco LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 665-0200
Fax: (513) 665-0219
bmarkovits@msdlegal.com
pdemarco@msdlegal.com
tcoates@msdlegal.com

Attorneys for Plaintiffs

## **<u>CERTIFICATION</u>**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") on this 21st day of December, 2018.

/s/ Sean K. Collins

Sean K. Collins
